**Affirmed and Memorandum Opinion filed April 24, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-10-01196-CR

**FRANCISCO CERVANTES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1244022**

## M E M O R A N D U M   O P I N I O N

In two issues, appellant, Francisco Cervantes, contends (1) the evidence is legally insufficient to support his conviction for aggravated robbery with a deadly weapon and (2) the trial court erred by admitting certain evidence. We affirm.

### I. BACKGROUND

According to the State's evidence, at approximately 5:30 p.m. on November 16, 2009, complainant Jimmy Sanchez was vacuuming his truck at a carwash. A vehicle occupied by two men was driven into a nearby carwash stall. Although the men first seemed suspicious to Sanchez, he resumed vacuuming after the men appeared as though

they intended to wash their vehicle. Then, Sanchez was suddenly struck in the back of his neck. He turned to see one of the men, whom Sanchez later identified as appellant, pointing a revolver at Sanchez. Appellant instructed Sanchez to place his wallet, keys, and phone inside his truck. Sanchez complied except for retaining his wallet. Appellant ordered Sanchez to start the ignition, but Sanchez refused based on fear appellant might drive off while Sanchez was inside the vehicle. When appellant entered the truck, Sanchez was about to run, but appellant's accomplice pushed Sanchez against the back of the truck. Once Sanchez realized the accomplice did not have a gun, Sanchez tried to escape. Appellant then exited the truck and approached, pointed the revolver at Sanchez, and ordered, "give me your wallet or I'm going to shoot you." Sanchez threw his wallet several feet away hoping to divert appellant from Sanchez. Appellant retrieved the wallet. The accomplice then ordered Sanchez to leave. Sanchez ran toward his nearby home where his family called 9-1-1.

The incident was recorded on the carwash surveillance camera, but those photographs lacked sufficient quality for identification of the perpetrators. From the photographs, police officers obtained the license number of the perpetrators' vehicle. Officers traced the vehicle to the mother of appellant's accomplice, located the accomplice in possession of Sanchez's truck, and eventually discovered appellant's identity as a suspect.

Within a few weeks after the robbery, the police showed Sanchez two separate photograph arrays, each including six photographs of men with similar appearances. In the first array, Sanchez identified the accomplice. In the second array, Sanchez "kept fixating" on appellant's photograph and then narrowed identification of the gunman to two photographs, including appellant's, but could not make a conclusive identification. Subsequently, Sanchez viewed a live lineup of six persons with similar appearances and immediately identified appellant as the gunman. At trial, Sanchez identified appellant as the gunman and then testified he was "pretty certain" of this identification.

2

A jury found appellant guilty of aggravated robbery, and the trial court sentenced him to twenty-five years' confinement.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends the evidence is insufficient to support his conviction.

### A. Standard of Review

When reviewing sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as thirteenth juror and may not substitute our judgment for that of the fact finder by re-evaluating weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* This standard applies equally to both circumstantial and direct evidence. *Id*. Our duty as reviewing court is to ensure the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

### B. Analysis

A person commits aggravated robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death" and "uses or exhibits a deadly weapon." Tex. Penal Code Ann. §§ 29.02(a)(2); 29.03(a)(2) (West 2011). Appellant does not dispute that Sanchez was the victim of an aggravated robbery. Rather, appellant argues there is no evidence identifying him as one of the robbers.

3

Appellant emphasizes Sanchez's testimony that he was "*pretty* certain" appellant was one of the robbers and Sanchez's failure to conclusively identify appellant in a photograph array. We disagree that Sanchez's "pretty certain" statement necessarily demonstrates he did not positively identify appellant at trial. On a cold record, it is impossible for us to ascertain the inflection in Sanchez's voice when he made this statement. Depending on the inflection, the statement may have reflected he was fairly certain or alternatively he was very certain. We cannot foreclose the possibility that the jury believed Sanchez was very certain.

We also disagree with the suggestion that the jury was required to entirely discount the result of the photograph array. The officer conducting this procedure testified the result was characterized as "negative" because of Sanchez's failure to identify only one person. However, the jury could have assigned some weight to the fact that Sanchez was "fixating" on appellant's photograph and narrowed his identification to two persons, including appellant. Although appellant emphasizes that the officer did not note this information on the array or in the police report, the jury was free to believe the testimony concerning this information. Moreover, the jury could have considered Sanchez's "pretty certain" statement at trial and the result of the array together with his positive identification of appellant in the live lineup.

Nonetheless, the jury could have found beyond a reasonable doubt that appellant was one of the robbers based solely on Sanchez's identification in the live lineup. However, appellant seems to challenge this identification, noting he was the only person in the lineup whose photograph was included in the array and Sanchez immediately identified appellant before hearing him speak. However, it was the jury's role to decide whether these factors affected credibility of the lineup identification. The jury could have reasonably reached the following conclusions: (1) Sanchez's failure to conclusively identify one perpetrator in the array increased credibility of his lineup identification by demonstrating he was unwilling to identify a suspect unless he was positive; (2) Sanchez correctly identified appellant in the lineup based solely on appearance without the

4

necessity of hearing his voice because the robbery scene was "well lit" and Sanchez testified he had a "good look" at appellant during the incident and appellant exhibited the same smirk during the lineup and the robbery; and (3) the lineup identification carried greater weight than appellant's "pretty certain" statement at trial because appellant's physical appearance at the time of the robbery and his arrest (when he was mostly bald) differed from his appearance at trial (when he had more hair).

Additionally, appellant relies on the following facts, apparently to challenge all identification evidence: the robbery lasted only a few minutes; Sanchez was scared during the incident; and Sanchez described appellant to an investigating officer as 5'7" to 5'9" tall and weighing between 200 and 220 pounds, whereas a "criminal history check" performed by officers after the robbery reflected appellant stood 6'1" and weighed 240 pounds. Again, the jury was free to consider these facts when evaluating credibility of the identifications and could have reasonably concluded (1) despite his fear, Sanchez correctly recalled details of the incident, including appellant's appearance, because Sanchez maintained sufficient composure to avoid being abducted in his truck, attempt an escape, and throw his wallet, and (2) appellant's weight may have changed between the time it was previously recorded in police records and the robbery, and (3) any variance between Sanchez's description and appellant's actual height and weight was not so significant that it negated Sanchez's subsequent identification because he clearly viewed appellant's face during the robbery.

Finally, appellant relies on the following facts when arguing there was no other evidence connecting appellant to the offense: ownership of the vehicle occupied by the robbers was traced to the accomplice's mother—not appellant; officers found Sanchez's truck in the accomplice's possession after the robbery; the carwash surveillance photographs lacked sufficient quality for positive identification of the gunman; and there was no fingerprint evidence obtained at the scene that linked appellant to the offense. However, lack of surveillance footage or fingerprint evidence linking appellant to the offense does not render the evidence insufficient to support his conviction, in light of

5

Sanchez's positive identification. *See Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (recognizing complainant's identification was alone sufficient to support conviction despite lack of fingerprints or DNA evidence connecting appellant to robbery and fact that gun used in robbery and victim's stolen currency were not recovered from appellant). Moreover, the fact that appellant did not own the vehicle occupied by the robbers or maintain possession of Sanchez's truck after the robbery did not negate evidence proving appellant's participation in the offense. *See id.*

In sum, the evidence is legally sufficient to support the conviction. We overrule appellant's first issue.

### III. ADMISSION OF EVIDENCE

In appellant's second issue, he contends the trial court erred by admitting testimony from a police officer that he observed appellant and the accomplice sitting together at a park approximately one month before the robbery. Consistent with his trial objections, appellant contends this testimony was irrelevant or alternatively any relevance was substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 402, 403. With respect to both contentions, appellant suggests that, in light of evidence "solidly link[ing]" the accomplice, but not appellant, to the robbery, the trial court improperly permitted the State to rely solely on testimony the men were observed together a month before the robbery to prove appellant was also a party.

Assuming, without deciding, that the trial court erred by admitting the testimony, we conclude any error was harmless. We must disregard non-constitutional errors that do not affect a criminal defendant's "substantial rights." *See* Tex. R. App. P. 44.2(b). Under this standard, an error is reversible only when it had a substantial and injurious effect or influence in determining the jury's verdict. *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). We should not overturn the conviction if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect. *Id.* In assessing the likelihood that a jury's decision was adversely

6

affected by the error, we consider the entire record, including any testimony or physical evidence admitted, nature of the evidence supporting the verdict, character of the alleged error, and how it might have been considered in connection with other evidence. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider jury instructions, the State's theory, any defensive theories, closing argument, voir dire, and whether the State emphasized the error. *Id.* at 355–56.

We recognize the State mentioned the testimony at issue during closing argument, but only briefly among evidence showing appellant committed the robbery. Further, the State mentioned the testimony only after appellant first referenced it during his closing argument. Regardless, when the State presented the testimony, the jury had already heard evidence regarding Sanchez's emphatic identification of appellant in the live lineup, other facts discussed above reflecting this identification was credible, Sanchez's statement at trial regarding identification of appellant, and results of the photograph array. Significantly, there is no indication in the record that, when Sanchez made his separate, emphatic pre-trial identifications of both the accomplice and appellant, Sanchez knew these men had been observed together before the robbery. Therefore, we have fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, we overrule appellant's second issue.

We affirm the trial court's judgment.


/s/     Charles W. Seymore
        Justice



Panel consists of Justices Frost, Seymore, and Jamison.
Do Not Publish — Tex. R. App. P. 47.2(b).

7