ACCEPTED
01-14-00965-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/27/2015 4:03:52 PM
CHRISTOPHER PRINE
CLERK

## No. 01-14-00965-CR

In the
**Court of Appeals**
For the
**First District of Texas**
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

7/27/2015 4:03:52 PM

CHRISTOPHER A. PRINE
Clerk

———————◆———————

**No. 1381604**
In the 248th District
Of Harris County, Texas

———————◆———————

**ELMER ALVARADO**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

———————◆———————

STATE'S APPELLATE BRIEF

———————◆———————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**ERIN EPLEY**
Assistant District Attorney
Harris County, Texas

**KIMBERLY APERAUCH STELTER**
Harris County Criminal Justice Center
1201 Franklin, Suite 600
Houston, Texas 77002
Telephone: 713.755.5826
stelter_kimberly@dao.hctx.net
State Bar Number: 19141400

ORAL ARGUMENT NOT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

State believes that the matters raised by the appellant are well-settled, that the briefs in this case adequately apprise this Court of the issues and the law. Therefore, the State does not request oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

*Counsel for the State:*

**Devon Anderson** — District Attorney of Harris County

**Kimberly Aperauch Stelter** — Assistant District Attorney on

appeal

**Erin Epley**— Assistant District Attorney at trial

*Appellant or criminal defendant:*

**Elmer Alvarado**—Defendant

*Counsel for Appellant:*

**Kyle B Johnson** — Counsel on appeal

**Sam Cammack, Maverick Ray**— defense counsel at trial

*Trial Judge:*

**Honorable Katherine Cabaniss** — Judge Presiding

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ........................................................i

IDENTIFICATION OF THE PARTIES..................................................................i

TABLE OF CONTENTS ...................................................................... ii

INDEX OF AUTHORITIES ................................................................. iii

STATEMENT OF THE CASE.................................................................1

STATEMENT OF FACTS........................................................................1

SUMMARY OF THE ARGUMENT.........................................................4

REPLY TO APPELLANT'S SOLE ISSUE PRESENTED.............................................4

> **The evidence is sufficient for the jury to have found appellant guilty of indecency with a child.**

PRAYER ........................................................................................13

CERTIFICATE OF SERVICE ...............................................................14

CERTIFICATE OF COMPLIANCE........................................................15

# INDEX OF AUTHORITIES

**CASES**

*Adanandus v. State,*
   866 S.W.2d 210 (Tex. Crim. App.1993)................................................................. 8

*Garcia v. State*,
   2014 WL 7140423, at *4-5 (Tex. App.—
   Austin, 2014, pet. ref'd)(not designated for publication) .................................. 11

*Gear v. State,*
   340 S.W.3d 743 (Tex. Crim. App. 2011)................................................................ 4

*Hooper v. State,*
   214 S.W.3d 9 (Tex. Crim. App. 2007) ................................................................... 5

*Jackson v. Virginia,*
   443 U.S. 307 (1979)................................................................................................ 5

*Langley v. State*,
   2015 WL 2394144, at *3 (Tex. App.—
   Tyler 2015, no pet. h.)(not designated for publication) ..................................... 11

*Rogers v. State,*
   105 S.W.3d 630(Tex. Crim. App. 2003)................................................................ 8

*Whatley v. State,*
   445 S.W.3d 159 (Tex. Crim. App. 2014)........................................................5, 8, 10

**STATUTES**

TEX. PENAL CODE ANN. §21.11(a)(1) (West 2011) ............................................................. 5

TEX. PENAL CODE § 6.01(a) (West 2011).......................................................................... 8

TEX. PENAL CODE ANN. §21.11(c) (West 2011 ................................................................. 6

## RULES

TEX. R. APP. P. 38.2(a)(1)(A) ................................................................................................i

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

The appellant was charged with aggravated sexual assault of a child under six years of age (CR-6). He pled not guilty, and the case proceeded to trial before a jury (CR-92). The jury found appellant guilty of the lesser-included offense of indecency with a child, and sentenced him to five years in the institutional division of the Texas Department of Criminal Justice (CR-92). Appellant then filed notice of appeal, and the court certified his right to appeal (CR-90, 94).

———————◆———————

## STATEMENT OF FACTS

On February 16, 2013, Rita dropped her five-year-old daughter Anna off at her Aunt Gloria's to attend a birthday party with Gloria's granddaughter Heather (RR4-14-15).[1] After the party, Anna went home with Gloria to spend the night (RR5-15). Anna slept in a bed with Heather, Gloria, and Gloria's

---

[1] To protect their privacy, the State is using the pseudonyms "Anna," "Rita," and "Heather" to refer to the complainant, her mother, and the complainant's young cousin.

husband, appellant.  Appellant was on the left, then Anna, then Heather and Gloria (RR5-17).

Anna woke up during the night to find appellant's hand inside her leggings and underwear (RR5-17).  Appellant's hand was touching inside her "middle part"[2] and moving (RR5-21).  Then appellant "scratched" her (RR5-21).  This went on for "seven Mississippis" until Anna moved away (RR5-22).  Anna didn't say anything to appellant or Gloria about what happened that night or later, but she did wake her aunt and ask her to trade places with her in bed (RR5-23).

Anna went home the next evening (RR4-16, 5-24).  Rita had Anna take a bath before bed (RR4-19).  When she checked in on Anna, however, Anna was not bathing (RR4-19).  Rita began helping Anna wash, but when she got to her pelvic area Anna didn't want her mother to touch her (RR4-20). Rita was surprised, because Anna had never acted this way before (RR4-21).

After the bath, Rita asked Anna if someone had touched her (RR4-21). Anna's reaction was to turn and give her mother a "shocked" look (RR4-22). She then looked down, turned her back to her mother, and said "yes" (RR4-22-

---

[2] Using an anatomically correct doll, Anna indicated that her "middle part" was the female genitalia (RR5-19).

2

22). Anna told Rita how appellant touched her under her panties and "scratched" her in her "cookie"[3] (RR4-22).

Rita was upset, but did not call the police right away (RR4-24-25). Instead, she waited until the next day to take Anna to a doctor, as Anna had hurt her foot at the birthday party (RR4-26). While at the doctor's office Rita asked him to check Anna's vaginal area, but did not say why (RR4-30). The doctor did not find anything wrong (RR4-35). He spoke to Anna privately and asked her if someone had touched her, but she denied it (RR4-34).

After talking to school personnel, Rita reported the incident to police (RR3-11). Anna was interviewed by a forensic investigator who specialized in interviewing children (RR4-105, 107). While the investigator was not able to speak of the details Anna provided, she was able to say that Anna gave a clear and consistent explanation of who, where, and what happened to her, and that her explanation of events was consistent with what she had told her mother (RR4-117).

The police also interviewed appellant (RR3-44). Appellant agreed with Anna about the date they had been together last but didn't want to talk about what had happened, saying it was a "very delicate situation." (RR3-46).

---

[3] Anna referred to the vaginal area as "cookie," or "torta" when she was five and the offense occurred (RR4-20).

3

────────◆────────

## <u>SUMMARY OF THE ARGUMENT</u>

The evidence is sufficient for the jury to have found appellant guilty of indecency with a child. A rational jury could have found that appellant's touching of the complainant was voluntary and not done while he was sleeping.

────────◆────────

## <u>REPLY TO APPELLANT'S SOLE ISSUE PRESENTED</u>

**The evidence is sufficient for the jury to have found appellant guilty of indecency with a child.**

Appellant raises only one issue in his appeal; that the evidence was legally insufficient to support his conviction for indecency with a child.

### <u>A. Standard of review on insufficiency of the evidence</u>

"In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found

4

the essential elements of the crime beyond a reasonable doubt." *Gear v. State,* 340 S.W.3d 743, 746 (Tex. Crim. App. 2011), *citing Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979). Under this standard, appellate courts must defer to the jury's ability to fairly "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319; *see Whatley v. State,* 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury may draw "multiple reasonable inferences as long as each inference is supported by the evidence." *Hooper,* 214 S.W.3d at 15. "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id.* at 16. It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *See id.* at 13. Finally, circumstantial evidence has the same probative value as direct evidence, and alone, can be sufficient to establish guilt. *Id.*

## B. Application to the facts

In addition to the initial charge of super-aggravated sexual assault, the jury was given the option to convict appellant of the lesser-included offense of

indecency with a child by sexual contact. Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. §21.11(a)(1) (West 2011). To sustain a conviction for indecency with a child under this subsection, the evidence must show that the defendant engaged in sexual contact with a child younger than 17 years of age, whether the child is of the same or opposite sex. *Id.* The jury was thus instructed to find appellant guilty of indecency with a child if they found beyond a reasonable doubt that appellant "did ... intentionally or knowingly engage in sexual contact with [Anna], a child under the age of seventeen years, by touching the genitals of [Anna] with the intent to arouse or gratify the sexual desire of [the appellant]..." (CR-72). "Sexual contact" was defined for the jury as "any touching by a person, including touching through clothing, of any part of the genitals of a child with the intent to arouse or gratify the sexual desire of any person." (CR-72). *See* Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. §21.11(c) (West 2011). The jury found appellant guilty of this lesser offense (CR-79).

Appellant concedes that a jury could find that he engaged in sexual contact with Anna as she described, but argues that the evidence is insufficient to prove that he intentionally or knowingly committed the touching (Appellant's brief, p. 22). Appellant's argument is based on Anna's testimony that she assumed appellant was "asleep" when he touched her. This statement was made in response to the prosecutor's question of why Anna

6

didn't say anything to appellant when he touched her that night. Anna responded "Because I didn't woke him up." (sic) (RR5-22). The following exchange then occurred:

Q (by the State): You didn't wake him up. Do you think he was asleep?

A (by Anna): Yes.

Q: How do you think his hand got under your pants?

A: I do not know.

Q: So, you're just guessing, huh?

……….

A: Yes.

Q: Okay. 'Cause did you look at him while he was doing that?

A: No.

Q: So, you don't know if his eyes were open or not, do you?

A: (Nodding).

(RR5-22-23).

On Cross-examination defense counsel seized on Anna's assumption that appellant was asleep and got the seven-year-old to answer affirmatively to his question "when Elmer touched you, did you think it was an accident in the beginning?" (RR5-60). As a result, the defense argued alternatively at

7

closing that either appellant never touched Anna, or that if he did, the touching was an "accident." (RR5-91, 92, 93, 104).

Appellant, by arguing that he touched Anna while asleep and by accident, is essentially contending that the evidence failed to show that his act was "voluntary." *Whatley v. State*, 445 S.W.3d at 166. "[T]he issue of the voluntariness of one's conduct, or bodily movements, is separate from the issue of one's mental state." *Adanandus v. State,* 866 S.W.2d 210, 230 (Tex. Crim. App.1993). Section 6.01(a) of the Texas Penal Code requires a voluntary—i.e., volitional—act as an element of guilt. TEX. PENAL CODE § 6.01(a) (West 2011) ("A person commits an offense only if he voluntarily engages in conduct, including, an act, an omission, or possession."). "Voluntariness," within the meaning of Section 6.01(a), refers only to one's own physical body movements. *Whatley v. State*, 445 S.W.3d at 166. "If those physical movements are the nonvolitional result of someone else's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis, or other nonvolitional impetus, that movement is not voluntary." *Id.*, *citing Rogers v. State,* 105 S.W.3d 630, 638 (Tex. Crim. App. 2003).

Although Anna might have assumed appellant was asleep and touched her by accident, the jury could have understood what the child did not: that

appellant's actions were both volitional and intentional. Appellant's touch was not simply a brush up against the exterior of Anna's clothing, which might accidently happen while sleeping. Rather, Anna testified that she woke up with appellant's hand deep inside her leggings and panties, and with appellant's fingers touching her vaginal area (RR3-93, RR4-23, RR5-21). Appellant's hand was moving under Anna's panties and lasted "seven Mississippis" after she woke up, until she moved away (RR5-21, 23). This is not the type of contact which happens by "accident" or while "asleep."

Furthermore, while Anna might not have known what appellant was doing or why he was doing it, she seemed to instinctually know it was wrong. Instead of rolling over and going to sleep, she woke up her aunt and asked if she could move to the other side of the bed (RR5-22). When taking a bath the next day she was fussy and upset, and didn't want her mother to touch her vaginal area (RR4-19, 21). When her mother asked if someone had touched her, she acted both shocked and embarrassed, turning away and looking down before answering "yes." (RR5-22). Thus, while Anna might have agreed with defense counsel that the touching could have been an "accident," she seemed not to believe this explanation herself.

While Anna sensed something was wrong, the jury had the maturity to know it. They could understand, where Anna could not, the sexual nature of

appellant putting his hand inside the little girl's panties and "scratching" her vagina. And they would understand that such actions do not happen by "accident." The prosecutor put it best in her closing argument:

> And she may not understand it now. And in her brain, unsure of what a sexual offense is or what the motivation for that might be, she will tell you I didn't see his eyes, but maybe he was asleep, probably he was asleep, right? It was an accident. He thought I was something else. Because she doesn't know what you and I know. She doesn't know what he knows, which is there's an actual purpose for the things that he was doing. And she shouldn't have to understand that yet. But you do.

(RR5-112). The jury, looking at appellant's actions from an adult point of view, and drawing reasonable inferences therefrom, could conclude that appellant's conduct was voluntary and intentional, and not an accident.

Finally, several other courts have found, in similar circumstances, that a defendant's actions were voluntary despite claims of being asleep. For example, in *Whatley*, the defendant, the complainant's step-father, on more than one instance reached under the complainant's clothing and rubbed her vagina while pretending to be asleep. *Whatley*, 445 S.W.3d at 164. The complainant, who was eleven at the time, told investigators that she thought appellant was asleep and may not have known what he was doing. *Id.* When she testified at 18 years of age, however, she stated that she had no doubt that the defendant knew what he was doing. *Id.* Finding the evidence sufficient for

10

the jury to have found appellant's actions to be voluntary, the court noted that:

> [a] reasonable jury could have had difficulty believing that the appellant, who only "sometimes" fell asleep quickly while in bed with his wife, was so deeply asleep within minutes on three different occasions that he unconsciously undertook the dexterous action of putting his hands inside the complainant's pants.

*Id.* The jury in this case could likewise find it difficult to believe that appellant unconsciously inserted his hand into the waistband of a petite five-year-old girl's leggings and panties deep enough to "scratch" her vagina, and continued to do so until she moved away. *See also Garcia v. State*, 2014 WL 7140423, at *4-5 (Tex. App.—Austin, 2014, pet. ref'd)(not designated for publication) (jury could have disbelieved complainant's testimony that she thought the defendant must have been asleep when he engaged in touching); *Langley v. State*, 2015 WL 2394144, at *3 (Tex. App.—Tyler 2015, no pet. h.)(not designated for publication) ("Although Jane Doe's testimony showed that she believed Appellant was sleeping, this does not negate intent, as it can be inferred from the circumstances that Appellant was feigning sleep").

Viewing the evidence in the light most favorable to the verdict, a reasonable jury could have determined that appellant's actions were

11

voluntary and did not occur while he was asleep or by accident.  Appellant's

sole point of error is without merit, and should be overruled.

———————◆———————

## PRAYER

The State respectfully requests that this Court affirm the judgment of the trial court.

**DEVON ANDERSON**
District Attorney
Harris County, Texas


/s/Kimberly Aperauch Stelter
**KIMBERLY STELTER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
State Bar Number: 19141400
Stelter_kimberly@dao.hctx.net

13

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument is being served

by mail at the following address

Kyle B. Johnson
Attorney at Law
917 Franklin, Suite 320
Houston, Texas  77002

/s/Kimberly Aperauch Stelter
**KIMBERLY STELTER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
State Bar Number: 19141400
stelter_kimberly@dao.hctx.net

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned attorney certifies that this computer-generated document has a word count of **2,929** words, based upon the representation provided by the word processing program that was used to create the document.

/s/Kimberly Aperauch Stelter

**KIMBERLY STELTER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002-1923
(713) 755-5826
TBC No. 19141400
stelter_kimberly@dao.hctx.net