ACCEPTED
14-15-00696-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
12/28/2015 7:59:33 PM
CHRISTOPHER PRINE
CLERK

# IN THE COURT OF APPEALS
# FOR THE FOURTEENTH DISTRICT OF TEXAS
# HOUSTON, TEXAS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
12/28/2015 7:59:33 PM
CHRISTOPHER A. PRINE
Clerk

## NO. 14-15-00696-CV

## In the Matter of J.C.

On appeal from the County Court at Law No. Four (4), Sitting as a Juvenile Court,
in Fort Bend County, Texas
Cause No. 14-CJV-018909

## APPELLANT'S BRIEF

**LEIGH LOVE**
ATTORNEY FOR APPELLANT
SBN: 24058364
The Love DuCote Law Firm LLC
4610 Sweetwater Blvd.,
Suite 210
Sugar Land, Texas 77479
832.471.6904 telephone
832.553.7765 facsimile
Email:leigh@loveducotelaw.com

ORAL ARGUMENT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument in this cause.  See Tex. R. App. Proc. 39.7

## IDENTITIES OF PARTIES AND COUNSEL

APPELLANT:           J.C.

Trial counsel:          DREW DORNBURG
Attorney at Law
SBN: 24049861
201 Jackson, 2nd Floor
Richmond, Texas 77469
832.449.6116 telephone

JAMES MCCALLA
SBN: 24051017
P.O. Box 2108
Bellaire Texas 77402
281.793.2158 telephone

Appellate counsel:    LEIGH LOVE
SBN: 24058364
The Love DuCote Law Firm LLC
4610 Sweetwater Blvd., Suite 210
Sugar Land, Texas 77479
832.471.6904 telephone
832.553.7765 facsimile
leigh@loveducotelaw.com

APPELLEE:          STATE OF TEXAS

Trial counsel:          TYRA MCCOLLUM
SUSAN SWEENEY
Fort Bend County District Attorney's Office
1422 Eugene Heimann Circle
Richmond, Texas 77469
281.341.4460 telephone
281.341.4440 facsimile

Appellate counsel:        APPELLATE DIVISION
Fort Bend County District Attorney's Office
301 Jackson Street
Richmond, Texas 77469
281.341.4460 telephone
281.341.4440 facsimile

# TABLE OF CONTENTS

Page No.

STATEMENT REGARDING ORAL ARGUMENT ...................................…..2

IDENTITIES OF PARTIES AND COUNSEL……………………….…………..2

TABLE OF CONTENTS ...................................................…..4

INDEX OF AUTHORITIES .............................................…..6

STATEMENT OF THE CASE ...........................................…..7

ISSUES PRESENTED............................................................10

    **I.**     **POINT OF ERROR NO. ONE: THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS REFERENCES TO A BB GUN**

        **A. THE PAT-DOWN OF JUVENILE APPELLANT, J.C., WAS ILLEGAL, AND, THEREFORE, ANY CONTRABAND FOUND AS A RESULT OF SAID ILLEGAL PAT-DOWN SHOULD BE SUPPRESSED**

        **B. THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO USE A PHOTOGRAPH OF THE BB GUN FOUND ON JUVENILE APPELLANT AND WHEN IT ALLOWED THE STATE TO REPEATEDLY REFERENCE SAME.**

    **II.**     **POINT OF ERROR TWO: THE EVIDENCE ADDUCED AT TRIAL WAS NOT LEGALLY SUFFICIENT TO SUPPORT THE JURY FINDING BEYOND A REASONABLE DOUBT THAT THE ALLEGATION OF AGGRAVATED ROBBERY WAS TRUE AND PROPERLY SUPPORTED BY THE EVIDENCE AND THAT JUVENILE APPELLANT, J.C., ENGAGED IN DELINQUENT CONDUCT.**

STATEMENT OF FACTS ……………………………………………………11

SUMMARY OF THE ARGUMENT ……………………………………….13

ARGUMENT ……………………………………....……......………15

    POINT OF ERROR I(A)……………………………....……...……15

    POINT OF ERROR I(B)……………………………..........…18

    POINT OF ERROR II……………..…………………….…27

CONCLUSION……………………………………………….33

PRAYER…………………………………………………35

CERTIFICATE OF SERVICE …………………………….......…36

CERTIFICATE OF COMPLIANCE……………………………36

# INDEX OF AUTHORITIES

**CASES**                                                              **PAGE**

*Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)……………….......30

*Clark v. Procunier*, 755 F.2d 394, 396 (5th Cir. 1985)...……………………...29

*Gear v. State*, 340 S.W.3d 743, 746 (Tex.Crim.App. 2011) …...……...…………29

*Gold v. State*, 736 S.W.2d 685 (Tex.Crim.App. 1987)……………..……………29

*Hooper v. State*, 214 S.W. 3d 9, 13, 15 (Tex.Crim.App. 2007)……………….......30

*In re Winship*, 297 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)…...………..29

*Jackson v. Virginia*, 443 U.S. 307, 316, 319, 326 [1979] …………………..28-30, 33

*Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App. 1993)………..…........30

*Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)………..…………...31

*Richardson v. State*, 879 S.W.2d 874 (Tex.Crim.App. 1993)……………………29

*Winfrey v. State*, No. PD-0943-11, 2013 Tex. Crim. App. LEXIS 431, *16, 22-23 (Tex. Crim. App. Feb. 27, 2013) (to be published)……………………………30-31

**STATUTES AND RULES**

Tex.Fam.Code 52.01(a)(3)(B)…………………………………...…………..16

Tex.Fam.Code 51.03(a)(3)…………………………………………………….17

Tex.R.Evid. Rule 402…………………………..…………14, 19-22, 27, 34

Tex.R.Evid. Rule 403…………………………………..…………14, 19-22, 27

**STATEMENT OF THE CASE**

The State of Texas filed an Original Determinate Sentence Adjudication Petition and Notice of Intention to Seek Approval of Grand Jury against Appellant on June 18, 2014, alleging that J.C., a child, engaged in delinquent conduct. (See Clerk's Record, pgs. 17-18, hereinafter abbreviated C.R., pg.). The original petition in cause number 14-CJV-018909 containing the allegation of Aggravated Robbery was presented to the Grand Jury and was approved by same on June 23, 2014. (C.R., pgs. 19-20). The certification to the juvenile court, specifically County Court at Law Number 4 of Fort Bend county, Texas, sitting as a Juvenile Court, was signed by the District Clerk in Fort Bend County, Texas, Annie Rebecca Elliott. *Id*. at 21.

At the time of the alleged commission of the acts alleged in the State's petition, J.C. was a child over the age of 10 years and under the age of 17 years, having been born of October 8, 1997.

The State of Texas filed a First Amended Determinate Sentence Adjudication Petition and Notice of Intention to Seek Approval of Grand Jury on October 6, 2014, alleging that he engaged in the same delinquent conduct (namely Aggravated Robbery). (C.R., pgs. 32-33). Following the First Amended Determinate Sentence Adjudication Petition and Notice of Intention to Seek Approval of Grand Jury is the certificate of approval of juvenile petition by Grand

Jury, which is blank and not signed by any member of the Grand Jury. (C.R., pgs. 34-35). The subsequent certification to the juvenile court is also not signed by the District Clerk in Fort Bend County, Texas, Annie Rebecca Elliott, on June 14, 2014. *Id*. at 36.

On October 13, 2014, the first amended petition in cause number 14-CJV-018909 containing the allegation of Aggravated Robbery was presented to the Grand Jury and was approved (C.R., pgs. 38-39). The certification to the juvenile court, specifically County Court at Law Number 4 of Fort Bend County, Texas, sitting as a Juvenile Court, was signed by the District Clerk in Fort Bend County, Texas, Annie Rebecca Elliott, on October 17, 2014. *Id*. at 40.

On March 24, 2015, Voir Dire commenced in the matter of J.C., a Juvenile, in County Court at Law Number 4, sitting as a Juvenile Court. The Jury was sworn and released until the following Tuesday. *[Reporter's Record Vol. II, pgs. 117-122,* hereinafter abbreviated *R.R. Vol., pg.*].

On March 30 and 31, 2015, the Juvenile Appellant, J.C., argued a motion to suppress evidence, to wit: a gun. The trial court Judge found that the State failed to prove up the proper chain of custody for the gun, and that the State also failed to properly authenticate the gun as the same gun used in the alleged robbery. [*R.R. Vol. IV, pgs. 51-52]*. After refusing to allow the gun into evidence, however, he allowed the State to "go into a full description of it" and to use the gun as

demonstrative evidence. *Id*. at 52. The trial court also allowed the State to use a photograph of the gun that was found on Juvenile Appellant when he was in New Braunfels. [*R.R. Vol. V, pg. 9*].

On March 31, 2015, the trial on the merits commenced, and the Juvenile Appellant, J.C., pled "Not True." (C.R., pgs. 56-57). On April 1, 2015, the trial Court admonished the Juvenile Appellant in accordance with juvenile procedure. [*R.R., Vol. V, pgs. 5-9*]. On April 6, 2015, the jury found that Juvenile Appellant, J.C., did engage in delinquent conduct on or about May 2, 2014, by committing the offense of Aggravated Robbery to wit: while in the course of committing theft and with the intent to obtain property of Thomas Mathew, without the effective consent of said Thomas Mathew, and with intent to deprive the said Thomas Mathew of said property, by using and exhibiting a deadly weapon, to wit: a gun, and intentionally or knowingly place Thomas Mathew in fear of imminent bodily injury and death. (C.R., pg. 85). The jury also answered the Special Issue in the affirmative, and found from the evidence beyond a reasonable doubt, that the Juvenile Appellant, J.C., while in the course of committing the delinquent conduct of Aggravated Robbery, did then and there personally use or exhibit a deadly weapon, to-wit: a gun, in the commission of the Aggravated Robbery. (C.R., pg. 86).

After the Juvenile Appellant was adjudicated delinquent, on May 12, 2015,

the trial Court reconvened for the disposition hearing. The trial court sentenced Juvenile Appellant to a sentence of eleven (11) years confinement in the Texas Juvenile Justice Department ("TJJD") with the possibility of transfer to the Institutional Division of the Texas Department of Criminal Justice. (C.R., pg. 98). Juvenile Appellant J.C., accordingly, appeals the jury's verdict of delinquent conduct and the trail Court's sentence of eleven (11) years confinement.

## ISSUES PRESENTED

I.   **POINT OF ERROR NO. ONE: THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS REFERENCES TO A BB GUN**

    **A. THE PAT-DOWN OF JUVENILE APPELLANT, J.C., WAS ILLEGAL, AND, THEREFORE, ANY CONTRABAND FOUND AS A RESULT OF SAID ILLEGAL PAT-DOWN SHOULD BE SUPPRESSED**

    **B. THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO USE A PHOTOGRAPH OF THE BB GUN FOUND ON JUVENILE APPELLANT AND WHEN IT ALLOWED THE STATE TO REPEATEDLY REFERENCE SAME.**

II.  **POINT OF ERROR TWO: THE EVIDENCE ADDUCED AT TRIAL WAS NOT LEGALLY SUFFICIENT TO SUPPORT THE JURY FINDING BEYOND A REASONABLE DOUBT THAT THE ALLEGATION OF AGGRAVATED ROBBERY WAS TRUE AND PROPERLY SUPPORTED BY THE EVIDENCE AND THAT JUVENILE APPELLANT, J.C., ENGAGED IN DELINQUENT CONDUCT.**

## STATEMENT OF THE FACTS

On Friday, May 2, 2014, a gaming establishment/convenience store/ "beer joint" called the Riverside Drive-In was robbed at gunpoint. *[R.R. Vol. IV, pg. 72; Vol. VI, pg. 44]*. The Riverside Drive-In is located in the town of East Bernard in Fort Bend County, Texas. The complaining witness, Thomas Mathew, identified the armed robber as a black male. *[R.R. Vol. IV, pg. 117]*. This unidentified black male also exhibited a firearm and stole money from the establishment. *[R.R. Vol. IV, pg. 125]*.

Juvenile Appellant, J.C., resides with his grandmother, D.C., in East Bernard. On Friday, May 2, 2014, at about 7:40 p.m., she told J.C. to walk the dogs then take the trash to their burn pit; the juvenile complied with her instructions. *[R.R. Vol. V, pgs. 90-91]*. At approximately 9:00 p.m., D.C. gave Juvenile Appellant, J.C., his dinner. Together, they then watched the Fashion Police on television. D.C. testified that Juvenile Appellant, J.C., was never sweaty, out of breath, nor flushed at any time. *[R.R. Vol. V, pgs. 92-93]*. D.C. further testified that Juvenile Appellant, J.C., was at her house until she went to bed at midnight on Friday night. *[R.R. Vol. V, pg. 56]*.

On Saturday, May 3, 2014, at approximately 10:00 a.m., she noticed he was gone. *[R.R. Vol. V, p 93]*. She called his mother who resides in New Braunfels. *[R.R. Vol. V, pg. 59]*. The grandmother then used an app installed on Juvenile

Appellant's phone and discovered that he was in New Braunfels also. *[R.R. Vol. V, pg. 61].* On Sunday, May 4, 2015, Juvenile Appellant contacted his grandmother and informed her that he was with his girlfriend, who also resides in New Braunfels. *[R.R. Vol. V, pgs. 68, 131-32].* On Monday, May 5, 2014, New Braunfels Police Department officers (hereinafter referred to as NBPD) notified the grandmother that they found Juvenile Appellant J.C. *[R.R. Vol. V, pg. 70].*

On May 5, 2014, NBPD officers, Corporal William Spence and Officer Leslie Bettice, located Juvenile Appellant J.C. sitting on a curb in a state park in New Braunfels with a T-shirt wrapped around his head. *[R.R. Vol. V, pgs. 70, 97, 118].* They were actually looking for a different person who had been reported suicidal when they made contact with Juvenile Appellant. When the police realized Juvenile Appellant was not the person for whom they were looking, they left. *[R.R. Vol. III, pg. 8].* Officer Bettice observed a green truck and remembered a call from the night before from a grandmother who had reported that her grandson had runaway and was driving her green truck. *[R.R. Vol. V, pg. 101].* NBPD then made contact with Juvenile Appellant J.C. a second time, who was in the exact same place that he had been when the police first made contact with him. *[R. R. Vol. 5, pgs. 101-103].* There was no testimony that he was nervous when the police approached him a second time.

NBPD detained Juvenile Appellant J.C. for approximately 40 to 45 minutes, who was by all accounts very cooperative. *[R.R. Vol. III, pg. 12.; Vol. V, pg. 152].* Corporal William Spence testified that Juvenile Appellant J.C. was not free to leave. *[R.R. Vol. III, pg. 12].* Because no relatives could quickly pick up the juvenile, the officers decided to detain him and transport him to the New Braunfels Juvenile Probation. *[R.R. Vol. V, pg. 108].* The police searched Juvenile Appellant J.C. prior to transporting him. *[R.R. Vol. III, pg. 30].* When the police went to search him, he volunteered that he had a BB gun on him. *[R.R. Vol. V pg. 130].* Officers testified that not only is it not against the law to possess a BB gun, a BB gun is also not a firearm. *[R.R. Vol. V, pgs. 115, 129, 145, 151].* The police also found some coins on his person, but no actual dollar bills. *Id.* at 128.

## SUMMARY OF THE ARGUMENT

This Honorable Court should reverse and remand the cause for new proceedings because the trial court erred when it did not grant Juvenile Appellant J.C.'s motion to suppress and when it allowed inadmissible evidence to be considered by the jury. First, the officers' pat-down of Juvenile Appellant was illegal, rendering any fruits found as a result of said pat-down inadmissible. Second, even if this Honorable Court determines the search was justified, the motion to suppress should have still been granted. Third, the State presented evidence that was both irrelevant and unfairly prejudicial evidence and should have

been deemed inadmissible under either Texas Rule of Evidence 402 or Texas Rule of Evidence 403. Finally, the evidence was legally insufficient to sustain a verdict. No rational trier of fact could believe that Appellant had engaged in delinquent conduct by committing the offense of Aggravated Robbery. Accordingly, the State failed to prove essential elements of its case beyond a reasonable doubt, and, consequently, the jury should not have found that Appellant engaged in delinquent conduct by committing the offense of Aggravated Robbery.

## ARGUMENT

I. <u>POINT OF ERROR NO. ONE</u>: THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS REFERENCES TO A BB GUN

    A. THE PAT-DOWN OF JUVENILE APPELLANT, J.C., WAS ILLEGAL, AND, THEREFORE, ANY CONTRABAND FOUND AS A RESULT OF SAID ILLEGAL PAT-DOWN SHOULD BE SUPPRESSED

## FACTS

On Friday, May 2, 2014, a gaming establishment/convenience store/ "beer joint" called the Riverside Drive-In was robbed at gunpoint. *[R.R., Vol. IV, pg. 72; Vol. VI, pg. 44]*. The Riverside Drive-In is located in the town of East Bernard in Fort Bend County, Texas. Four days later, New Braunfels Police Department officers detained, searched, and apprehended Juvenile Appellant J.C. on May 5, 2014. *[R.R., Vol. III, pg. 7]*. The NBPD did not have a directive to apprehend. *Id.* They were actually looking for a different person who had been reported suicidal when they made contact with Juvenile Appellant. NBPD left Juvenile Appellant after realizing Juvenile Appellant was not the person for whom they were looking. *[R.R., Vol. III, pg. 8]*.

Officer Bettice observed a green truck and remembered a call from the night before from a grandmother who had reported that her grandson had run away and was driving her green truck. NBPD then made contact with Juvenile Appellant

15

J.C. a second time, who was in the exact same place that he had been when the police first made contact with him. *[R.R., Vol. V, pgs. 101-103]*.

The police detained Juvenile Appellant J.C. for approximately 40 to 45 minutes, who was, by all accounts, very cooperative. *[R.R., Vol. III, pg. 12; Vol.. 5, pg. 152]*. Corporal William Spence testified that Juvenile Appellant J.C. was not free to leave. *[R.R., Vol. III, pg. 12)*. Because no relatives could quickly pick up Juvenile Appellant, the NBPD officers decided to detain and transport him to the New Braunfels Juvenile Probation. *[R.R., Vol. V, pg. 108]*. The NBPD searched Juvenile Appellant J.C. after detaining him and prior to transporting him. *[R.R., Vol. III, pg. 30]*. During the search of Juvenile Appellant J.C., he volunteered that he had a BB gun on him. *[R.R., Vol. V, pg. 130]*. The NBPD admitted at trial that it not against the law to possess a BB gun and that a BB gun is also not a firearm. *[R.R., Vol. V, pgs. 115, 129, 145, 15]*. The police also found some coins on his person, but no actual dollar bills. *Id*. at 128.

## APPLICABLE LAW

Section 52.01 of the Texas Family Code states that a child may be taken into custody by a law-enforcement officer, including a school district peace officer commissioned under Section 38.0071, Education Code, if there is probable cause to believe that the child has engaged in delinquent conduct or conduct indicating a need for supervision. *[Texas Family Code, Section 52.01(a)(3)(B)]*. Section 51.03

16

of the Texas Family Code defines conduct indicating a need for supervision as, *inter alia*, the voluntary absence of a child from the child's home without the consent of the child's parent or guardian for a substantial length of time or without intent to return. *[Texas Family Code, Section 51.03(b)(3)]*.

## ANALYSIS

During the Motion to Suppress and throughout the trial, the State failed to provide any evidence that the child had no intent to return to his home in East Bernard. The State failed to elicit any testimony that it was the opinion of any witness that the child was not planning on returning home. There was no evidence that Juvenile Appellant J.C. had taken all of his belongings or his clothes from his house in East Bernard. Conversely, the testimony and evidence revealed that he was merely visiting his girlfriend in New Braunfels. Further, the State proffered no evidence that Juvenile Appellant J.C. was absent from his home for a substantial length of time. To the contrary, NBPD Officer Bettice testified that on May 4, 2015, Juvenile Appellant J.C.'s grandmother had reported to the NBPD that he had run away. Since it was NBPD Officer Bettice and Corporal Spence who detained Juvenile Appellant, it is their knowledge that controls. And the only knowledge they had was that Juvenile Appellant had been missing for *one* night. One night cannot be considered a substantial length of time.

Since there was no directive to apprehend, NBPD had no legal right to take

Juvenile Appellant J.C. into custody. Without the legal right to take Juvenile Appellant J.C. into custody, they had no authority to pat him down. Consequently, the NBPD should have never discovered the BB gun. Therefore, there should have been no mention of any BB gun found on Juvenile Appellant J.C. during the trial.

**B. THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO USE A PHOTOGRAPH OF THE BB GUN FOUND ON JUVENILE APPELLANT AND WHEN IT ALLOWED THE STATE TO REPEATEDLY REFERENCE SAME.**

**FACTS**

On Friday, May 2, 2014, the Riverside Drive-Inn located in East Bernard was robbed at gunpoint. Witnesses to the armed robbery testified that the assailant was a black male in possession of a firearm which he used in the commission of said robbery. Four days later, on May 5, 2014, the NBPD discovered a BB gun on Juvenile Appellant as a result of an unlawful detainment and search.

On March 30 and 31, 2015, the Juvenile Appellant, J.C., argued a motion to suppress evidence. The Honorable Sandy Bielstein found the State did not prove up the proper chain of custody, nor did it properly authenticate the BB gun found on Juvenile Appellant in New Braunfels as the same gun used in the aggravated robbery in East Bernard days earlier. *[R.R., Vol. VI, pgs. 51-52]*. Specifically, the Honorable Sandy Bielstein stated:

> I do not believe that anyone can prove to this Court or a jury, at this point in time, that this is the weapon or an air pistol or BB gun or pellet pistol, at any particular point in time was used for *any offense*. It is merely one -- e pluribus unum, one out of many.

*Id.* Emphasis Added.

However, even though the Honorable Sandy Bielstein himself admitted it would be error to let the BB gun into evidence, he allowed the State to "go into a full description of it" and use the photograph of the BB gun found on Juvenile Appellant when he was in New Braunfels as demonstrative evidence. *[R.R., Vol. VI, pg. 52; Vol. V, pgs. 9-12; Vol. VI, pg. 38].*

The trial court then ruled that the NBPD could testify about the BB gun they found on Juvenile Appellant when he was in New Braunfels, and the trial court overruled Juvenile Appellant's Rule 403 objection to same. *[R.R., Vol. V, pgs. 13-14].* To preserve error, Juvenile Appellant requested a running objection based on Rule 403 and the length of time between the aggravated robbery and the discovery of the BB gun on Juvenile Appellant. *[R.R., Vol. V, pgs. 94, 95].* Juvenile Appellant's objection was discussed in detail outside the presence of the jury. *[R.R., Vol. V, pgs. 94-95].* The trial court then granted Juvenile Appellant's request for a running objection to the BB gun. *[R.R., Vol. V, pg. 95]*

### APPLICABLE LAW

Under Rule 402 of the Texas Rules of Evidence, irrelevant evidence is not admissible. Under Rule 403 of the Texas Rules of Evidence, the court may

exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

## ANALYSIS

Assuming, *arguendo*, and that the NBPD's search of Juvenile Appellant was valid, the BB gun found as a result of that search should still be deemed inadmissible. A BB gun found on Juvenile Appellant, 4 days later, roughly 160 miles from where the aggravated robbery happened is irrelevant, especially when the trial court determined there was no proper authentication or chain of custody. The Honorable Sandy Bielstein correctly denied the BB gun's admission into evidence. Because the trial court found that there was no evidence to support the contention that the BB gun was the deadly weapon used in the aggravated robbery on May 2, 2014, or that it had ever been used in any offense, the BB gun found on Juvenile Appellant was completely irrelevant and should have been found inadmissible under Rule 402 of the Texas Rules of Evidence.

However, after the trial court properly denied the BB gun from being admitted into evidence, the trial court's allowance of the State to repeatedly mention in front of the jury that the NBPD found a BB gun on Juvenile Appellant and to repeatedly elicit testimony concerning same was error. Since it was not admitted as substantive evidence, it should have never been referenced to nor

20

shown to the jury. The allowance of any reference to a BB gun found days after an armed robbery, in a different town, on someone who is a different race from the purported robber is inadmissible under Rule 402 because it is not relevant.

The Honorable Sandy Bielstein then erroneously ruled the State could use the photograph of the BB gun. The trial court then mistakenly ruled that the NBPD could testify about the BB gun they found on Juvenile Appellant days after the robbery, some 160 miles from the scene of the crime, and the trial court incorrectly overruled Juvenile Appellant's Rule 403 objection.

Juvenile Appellant's Rule 403 objection should have been sustained because the BB gun was also inadmissible under Rule 403 of the Texas Rules of Evidence because the prejudicial effect far outweighed any probative value. Not only did the testimony that a BB gun was found on Juvenile Appellant cause unfair prejudice, it also confused the issues and mislead the jury. The fact that a BB gun was found on Juvenile Appellant should have never been introduced into evidence because the trial court had already ruled the BB gun was not related to the offense for which Juvenile Appellant J.C. was being tried.

To Juvenile Appellant J.C.'s substantial detriment, the State was allowed to introduce irrelevant, damning and highly prejudicial testimony from its witnesses regarding the fact that the NBPD found a BB gun on Juvenile Appellant. This irrelevant and prejudicial testimony created harm to Juvenile Appellant for which

no corrective measures could have provided relief.

The following exchange took place between the prosecutor and NBPD Officer Bettice:

Q: "And during the pat-down, were any weapons recovered?

A: It was what he described as a realistic pellet gun.

Q: Was that gun subsequently given to you?

A: Yes."

*[R.R., Vol. V, pg. 115].*

In fact, the prosecutors elicited testimony from Officer Bettice concerning the BB gun found on Juvenile Appellant on 8 pages of trial transcript *[R.R., Vol. V, pgs. 115, 116, 117, 123, 124, 126, 127, 128].* They spent one-fourth of that officer's time on the stand having her talk about the BB gun found on Juvenile Appellant, hammering it home in the minds of the jury.

The State once again violated Rule 403 when it continued this same prejudicial line of questioning when examining Corporal Spence, thereby causing unfair prejudice to Juvenile Appellant J.C., confusing the issues, misleading the jury, and needlessly presenting cumulative evidence. In fact, the State asked Corporal Spence very similar questions to those asked of Officer Bettice. To illustrate, the State continued its same line of questioning with the following leading question:

Q: "And when that search was ultimately conducted did you find that there was a weapon, or a simulated weapon on his person?

A: Yes, ma'am, we did.

Q: Why don't you describe that for us.

A: It was basically a BB gun, but it looked exactly like a -- I don't know how much y'all know about guns. **It's a 1911 Commander sized .45 caliber semiautomatic pistol."**

*[R.R., Vol. V, pg. 144].* Emphasis Added.

Trial counsel proceeded to object, and the State simply withdrew that question, allowing the harmful and unfair prejudice to permeate the jurors' minds. *Id.* Even though trial counsel objected and the State withdrew its question, the irreparable, harmful and prejudicial damage was already done to Juvenile Appellant, J.C., thus adversely affecting his substantial rights.

Later in the trial, the trial court clarified its ruling. The Honorable Sandy Bielstein stated, "[T]hat is demonstrative to show the jury what a BB pellet gun, whatever is. Just to show them what it is. I can't let that in without letting the other in. And because of the circumstances, I would be in error to do it." *[R.R., Vol. VI, pg. 38].*

Unfortunately, the trial court allowed the evidence to exceed its demonstrative scope. The State had already repeatedly referenced the fact that a BB gun was found on the Juvenile Appellant. However, they went even farther

and elicited testimony that the BB gun found on Juvenile Appellant was a deadly weapon. The State was further allowed to imply to the jury that the BB gun found on Juvenile Appellant was the same deadly weapon used at the armed robbery.

The trial court erred when it allowed the State to ask Detective Justin White the following:

Q: "Are you familiar with in the course of your training and experience, or just your work out there, investigating -- I guess what some people call them BB guns, some people call them pellet guns, some people call them Co2 guns?

A: Yes, ma'am.

Q: Are you familiar with those?

A: Yes, ma'am.

Q: What is that?

A: It is a weapon that is used to -- it doesn't use a gunpowder charge to fire a bullet the way a traditional handgun would. It uses air pressure to dispense a pellet or a BB.

Q: So, it is not the same thing as a firearm?

A: Correct.

Q: **Can a Co2 gun, a BB gun, a pellet gun, can that be a deadly weapon?**

A. **Absolutely."**

[R.R., Vol. VI, pgs. 40-41]. Emphasis added.

Juvenile Appellant's trial counsel objected and was overruled. Detective Justin White continued his testimony without being asked a question and stated:

"BB gun, pellet gun, a Co2 gun could be considered a deadly weapon in the fact that if I were to discharge one at someone and hit you in the eye with it and blinded your eye, I would consider that to be serious bodily injury, for sure."

Q: So, there are ways you described, as in the manner and means of the use of a Co2, BB gun, pellet gun, that it would be a deadly weapon?

A: Yes, ma'am.

Q: But does it have to be used that way, or just the manner and means of it's intended use?

A: The manner of use or intended use.

*[R.R., Vol. VI, pg. 41].*

The State then questioned Detective White about pellet guns. The State showed Detective White a picture of the BB gun found on Juvenile Appellant (Petitioner's Exhibit 1) and asked him "So, this is a photograph of a pellet gun?" *[R.R., Vol. VI, pg. 42].* Detective White answered in the affirmative. *[R.R., Vol. VI, pg. 43].* The State then published the picture of the BB gun found on Juvenile Appellant to the jury for "demonstrative purposes." *[R.R., Vol. VI, pg. 40-44].*

The State then referred to the inventory of items that were found on Juvenile Appellant by NBPD and asked Detective White:

Q: "Detective White, I believe my question was, did you retrieve other items that you thought were of evidentiary value?

A: Yes, Ma'am.

Q: And what were those items?

A: **A realistic looking pellet pistol that very much resembled a real hand gun."**

*[R.R., Vol. VI, pg. 67. Emphasis added]*.

The State continued:

Q: "I'm showing you what has been admitted as Petitioner's Exhibit 2-A. That's the inventory there from the New Braunfels. I'm going to ask you to just look at that inventory and determine if the items that you see indicated in the inventory include those items of evidentiary value that you were looking for?"

A: Yes, ma'am, they do.

Q: Which?

A: The pellet gun.

Q: And did you proceed to take that into custody?

A: Yes, ma'am."

*[R.R., Vol. VI, pgs. 67-68]*.


Q: Detective White, you have now -- you have been to New Braunfels, and you have the nature of your investigation in East Bernard?

A: Correct.

Q: And you have the nature of your investigation in New Braunfels?

A: Yes.

Q: Where were you in terms of your probable cause in the investigation itself?

*[R.R., Vol. VI, pg. 68]*.

Detective White then stated that he determined that probable cause had been established for J.C. as the suspect and that he obtained a directive to apprehend or an arrest warrant for the juvenile, over the relevance objection from counsel. *[R.R., Vol. VI, pg. 69]*.

Any reference to a BB gun found on Juvenile Appellant by NBPD should have been ruled inadmissible under either Rule 402 or Rule 403 of the Texas Rules of Evidence. The fact that a BB gun was found on Juvenile Appellant by NBPD days after the armed robbery in East Bernard, in a different town, on someone who is a different race from the purported robber was inadmissible under Texas Rule of Evidence Rule 402 because it is not relevant. Additionally, the State's repeated references to the fact that a BB gun was found on Juvenile Appellant by NBPD caused unfair prejudice to Juvenile J.C., confused the issues, mislead the jury, and further violated Rule 403 by creating a needless presentation of cumulative evidence. This irrelevant and prejudicial testimony created harm to Juvenile Appellant for which no corrective measures could have provided relief.

**II. POINT OF ERROR TWO: THE EVIDENCE ADDUCED AT TRIAL WAS NOT LEGALLY SUFFICIENT TO SUPPORT THE JURY FINDING BEYOND A REASONABLE DOUBT THAT THE ALLEGATION OF AGGRAVATED ROBBERY WAS TRUE AND PROPERLY SUPPORTED BY THE EVIDENCE AND THAT JUVENILE APPELLANT, J.C., ENGAGED IN DELINQUENT CONDUCT.**

## FACTS

A jury made a finding of "True" to the aforementioned allegation of delinquent conduct and the finding of "True" to the special issue. The trial court accepted the findings of the jury and the trial court further found beyond a reasonable doubt that the Juvenile Appellant, J.C., had engaged in delinquent conduct by violating section 29.03 of the Texas Penal Code and had engaged in the personal use or exhibition of a deadly weapon during the commission of said offense. Specifically, the jury found beyond a reasonable doubt that the Juvenile Appellant, J.C., did engage in delinquent conduct on or about May 2nd, 2014, in Fort Bend County, Texas, by committing the offense of aggravated robbery, to wit: while in the course of committing theft and with the intent to obtain property of Thomas Mathew, without the effective consent of the said Thomas Mathew and with intent to deprive the said Thomas Mathew of said property, by using and exhibiting a deadly weapon, to wit: a gun, and intentionally or knowingly place Thomas Mathew in fear of imminent bodily injury and death.

## APPLICABLE LAW

When reviewing legal sufficiency, an appellate court views all of the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307 [1979]. Based on that

28

evidence and the reasonable inferences drawn therefrom, this Court determines whether or not a rational juror could have found each element of the crime beyond a reasonable doubt. *See Gear v. State*, 340 S.W.3d 743, 746 (Tex.Crim.App. 2011) (<u>citing</u> *Jackson v. Virginia*, 433 U.S. 307, 318-19 (1979)).

The due process clauses of the U. S. and Texas Constitutions protect an Appellant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 297 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *See also, Richardson v. State*, 879 S.W.2d 874 (Tex.Crim.App. 1993).

The State is required to affirmatively prove each element of the offense. *Gold v. State*, 736 S.W.2d 685 (Tex.Crim.App. 1987). If the evidence, when viewed in the light most favorable to the verdict or judgment, gives equal or nearly equal support to the theories of innocence and guilt, the evidence is insufficient. *Clark v. Procunier*, 755 F.2d 394, 396 (5th Cir. 1985). The chief value and function of sufficiency review is to protect an Appellant from conviction except upon proof beyond a reasonable doubt. The necessity of this protection is that it

> operates to give 'concrete substance' to the presumption of innocence to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding. [citation omitted] At the same time by impressing upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused, the standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself.

*Jackson v. Virginia*, 443 U.S. 307, 316 (1979).

This Court must defer to the jury's determinations of credibility and weight given to the evidence. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex.Crim.App. 2010) (citing *Jackson*, 433 U.S. at 319, 326). Not every fact must point directly and independently toward guilt, *as long as* the conviction is supported by the "cumulative force of all the incriminating evidence." *Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App. 1993).

Circumstantial evidence can be as probative as direct evidence, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). However, circumstantial evidence, which is "more speculative than inferential as to [Appellant's] guilt", is not sufficient to support a conviction. *See Winfrey v. State*, No. PD-0943-11, 2013 Tex.Crim.App. LEXIS 431, *22-23 (Tex.Crim.App. Feb. 27, 2013) (to be published). A jury may draw inferences – even multiple inferences – from both direct and circumstantial evidence, _as long as_ each inference is both reasonable and supported by the evidence. *Hooper*, 214 S.W.3d at 15.

A jury may not "come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Id*. The distinction between inferences and speculation is crucial:

> [A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them. Speculation is mere theorizing and guessing about the possible meaning of facts and evidence presented. *A conclusion reached by speculation may not be*

*completely unreasonable, but it is not sufficiently based on facts or evidence to support a conclusion beyond a reasonable doubt.*

*Id.* at 15-16 (emphasis added). Even if the evidence leads to a "strong suspicion of guilt," that "does not equate with legally sufficient evidence of guilt." *Winfrey*, 2013 Tex.Crim App. LEXIS 431, at *16. To determine the sufficiency of the evidence, this Court will apply the foregoing standard to the evidence, as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

## ANALYSIS

The only evidence of purported delinquent conduct presented by the State was that Juvenile Appellant was found days later with a BB gun in New Braunfels[1], in spite of the fact that he had two perfectly reasonable reasons for being in New Braunfels since both his mother and girlfriend lived there. In order for the jury members to reach the conclusion that Juvenile Appellant engaged in delinquent conduct by committing the offense of Aggravated Robbery, they theorized and guessed about the possible meaning of the evidence, instead of rendering a verdict supported by the evidence.

---

[1] Appellant contests the admissibility of this evidence, as discussed more fully in Point of Error One. However, in conducting a legal sufficiency review, this Court considers all the evidence before the jury, even improperly admitted evidence.

31

When the Court considers the lack of evidence that Juvenile Appellant engaged in delinquent conduct by committing the offense of Aggravated Robbery, the sheer speculation of the jury becomes all the more apparent:

- No testimony or evidence identified the Juvenile Appellant as being the same person who committed the aggravated robbery in East Bernard

- No testimony or evidence identified the Juvenile Appellant as being present at the Riverside Drive-In on day of the robbery

- No testimony or evidence placed Juvenile Appellant near the location of the store

- Juvenile Appellant's grandmother testified that Juvenile Appellant was with her on the night in question *[R.R. Vol. V, pg. 56]*.

- The complaining witness Thomas Mathew stated a black man robbed him [R.R. Vol. VI, pg. 117]

- The complaining witness Thomas Mathew stated the armed robber was 6'1" or 6'2," but the evidence showed that Juvenile Appellant was 5'8" [*Id.*]

- There was no description of any vehicle used by the robber *[R.R., Vol. VI, pg. 78]*

- Juvenile Appellant did not flee from the police *[R.R. Vol. V, pg. 101-103]*.

- Juvenile Appellant did not act nervous and was very cooperative with the police *[R.R. Vol. III, pg. 101-12; R.R. Vol. V, pg. 152]*.

- No money was found on Juvenile Appellant or in his wallet *[R.R. Vol. V, pg. 128]*.

In the instant case, it is abundantly clear that the jury came to its conclusions based on mere speculation or factually unsupported inferences or presumptions or specious implications promulgated by the State. Without question, it cannot be said that the near certitude of the delinquent conduct of the accused child was established in the case at bar. Accordingly, under *Jackson v. Virginia*, the evidence is legally insufficient to sustain the jury's finding of delinquent conduct, because even when all of the evidence is viewed in the light most favorable to the verdict, a rational trier of fact simply could not have found all of the essential elements of aggravated robbery true beyond a reasonable doubt or that the evidence supported a finding beyond a reasonable doubt that Juvenile Appellant used or exhibited a *deadly weapon* during the commission of the aggravated robbery.

## **CONCLUSION**

The due process clauses of the U. S. and Texas Constitutions protect an Appellant against wrongful conviction. Erroneous convictions trouble even the most conservative of thinkers; erroneous convictions/adjudications of delinquent conduct regarding juveniles are even more troubling and even more deleterious to the child himself. It is incumbent upon us all that we safeguard our children and afford them all of the protections and guarantees that our law provides.

The prosecution should always be held to its burden, that of the greatest in the land, namely, proof beyond all reasonable doubt. Certainly, when it comes to adjudicating juveniles and restricting their liberty, great pains should be made to make certain that the State has met its burden of proof beyond all reasonable doubt on each and every element of the offense. The State's evidence should be strictly scrutinized to assure that noting is in contravention of the law. In the case at bar, that cannot be said. The crux of the State's argument was that a BB gun was found on Respondent when he was in New Braunfels. The admission of that evidence was improper, affected a substantial right of a child and should have ben excluded as inadmissible evidence for ***any*** of the following reasons: (1) it was the result of an unlawful search; (2) it was irrelevant under Rule 402; (3) its probative value was substantially outweighed by unfair prejudice to the child; (4) its probative value was substantially outweighed by confusing of the issues; (5) its probative value was substantially outweighed by the jury being misled by this evidence; and (6) its probative value was substantially outweighed by the needless presentation of cumulative evidence. The State should be restrained from utilizing evidence that has no legal basis for admission and results in an unjust result, especially when prosecuting a child.

Accordingly, this Court should reverse and render a verdict of "Not True" or reverse and remand for new proceedings in accordance with the arguments contained herein.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant prays that this Court will reverse and render a verdict of "Not True" or, in the alternative, that this Court will reverse and remand for new proceedings in accordance with the arguments herein.

Respectfully submitted,

The Love DuCote Law Firm LLC
4610 Sweetwater Blvd.
Suite 210
Sugar Land, Texas 77479
832.471.6904 telephone
832.553.7765 facsimile

/s/ Leigh Love

LEIGH LOVE
SBN: 24058364
4610 Sweetwater Blvd.
Suite 210
Sugar Land, Texas 77479
832.471.6904 telephone
832.553.7765 facsimile
leigh@loveducotelaw.com
Attorney for Appellant,
J.C.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been e-mailed to John Harrity of the Appellate Division of the Fort Bend County District Attorney's Office at john.harrity@fortbendcountytx.gov, on the date of the filing of the original with the Clerk of this Court and has been sent via facsimile 281.341.4440.

/s/ Leigh Love

LEIGH LOVE

## CERTIFICATE OF COMPLIANCE

This is to certify that in accordance with Texas Rule of Appellate Procedure 9.4(i)(3), the Appellant's Brief has been reviewed by the word count function in Microsoft Word and contains 5,507 words in accordance with the applicable rule.

/s/ Leigh Love

LEIGH LOVE