Christopher Robert GEAR, Appellant

v.

The STATE of Texas.

No. PD–1069–10.

Court of Criminal Appeals of Texas.

June 15, 2011.

John D. Reeves, for Appellant.

Dale Summa, Asst. Dist. Atty., Lufkin, Jeffrey L. Van Horn, State's Attorney, Austin, for State.

### OPINION

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, KEASLER and ALCALA, JJ., joined.

Appellant was convicted in a bench trial

of attempted burglary of a habitation.[1] The court of appeals decided that the evidence is legally insufficient to support appellant's conviction because it would have been unreasonable for a fact finder to infer that appellant "intended to commit a felony, theft, or an assault inside the house" when he attempted to enter the complainant's home through a window that he had broken. *See Gear v. State,* No. 12–09–00226–CR, slip op. at 8, 2010 WL 1899645 (Tex.App.-Tyler, delivered May 12, 2010) (not designated for publication).[2] We decide that a fact finder could reasonably infer that appellant intended to commit theft when he attempted to enter the complainant's home through the broken window.[3]

The complainant testified that, just after lunch on January 2, 2009, she was inside her home and heard a rattling noise from a side door that had been nailed shut. Soon after this, she heard three loud bangs. When she went into a bedroom to investigate, she came face to face with appellant as he was trying to enter her home through a broken window that was not broken before the complainant heard the noises and before her encounter with appellant. The complainant testified that appellant "looked startled like he didn't know [she] was there." Appellant said something like, "I didn't do it" and ran. The complainant testified:

Q. [STATE]: And you went in. And what happened next?

A. [COMPLAINANT]: I went in, and the window was busted. So I immediately ran over to the window.... I stepped out the window like this (indicating), and then this young man stepped in the window. I mean, like we were right here (indicating). We were right there. And I just—I panicked. I don't know. I said, "What are you doing?" or something. And he said something to the fact, "I didn't do it" or something.

Q. What did he do then?

A. He took off and I took off. He took off this way, and I took off my way.

&ast; &ast; &ast;

Q. Now, what was he doing when you first saw him?

A. When I was walking toward the window, I didn't see him. When I got to the window and bent over to look out the window, he was jumping towards me. That's how we met. He was just— like he was prancing towards me, so— like he was jumping in.

&ast; &ast; &ast;

Q. Okay. Now, what were his actions when you saw him consistent with or what did that—

A. He just looked startled. I mean, I—I just really—It happened really fast. He looked startled like he didn't know I was there. Well, we didn't expect to see each other. I was startled because he

---

**1.** *See* Tex. Penal Code § 15.01(a); Tex. Penal Code § 30.02(a)(1).

**2.** The indictment in this case alleged that appellant did "with the specific intent to commit the offense of burglary of a habitation, do an act, to-wit: break a window, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended, without the effective consent" of the complainant.

**3.** The ground upon which we granted discretionary review states:

> The Court of Appeals erred in holding that the evidence presented at trial was legally insufficient to support the trier of fact's verdict of guilt. Specifically that the evidence was legally insufficient to show that the defendant's attempted entry into the habitation was done with the specific intent to commit theft, or an assault, or another felony offense.

was jumping towards me, and I guess he was startled because I was there. Like I said, I just said, "What are you doing?" And it kind of happened so fast. He ran one way, and I ran the other way. And I didn't see him anymore—

\* \* \*

Q. What did he appear to be doing when—

A. I thought he was jumping in. I thought he was—I thought he was jumping towards me. I really thought he was jumping in. That's what startled me. That's what made me run. I'm, like, you know, I didn't know—that was really scary, so ...[4]

Appellant testified at trial that he did not attempt to break into the complainant's home and that he did not intend to steal anything or to harm anyone. Appellant testified that he thought that the complainant's home was abandoned when he went to the back of the home to urinate. He testified that he may have punched the complainant's home because he was agitated at himself for having just quit his roofing job with no transportation and only about a dollar in his pocket. According to appellant, he saw the complainant "through a hole in her window" asking him if he was trying to break into her home, which he denied. Appellant denied breaking the window and "rattling" the side door.[5]

Appellant, however, had previously stated to the police that he broke the complainant's window when he leaned on it. An investigator (Herrington) with the

Angelina County Sheriff's Department testified in rebuttal:

Q. [STATE]: But is it real clear to you that he said he leaned on the window and broke the window in?

A. [HERRINGTON]: Yes, sir.

Q. Did he ever tell you that he hit the house with his fist or anything like that?

A. No, sir.

The court of appeals decided that "there is sufficient evidence to conclude that [appellant] was attempting to break into the house," but that "there is no evidence that allows any inference about what Appellant intended to do within the house," even though "a rational finder of fact could conclude that Appellant's intentions were not honorable." *Gear*, slip op. at 7. The court of appeals also decided that the "implausibility" of appellant's story "as to what he was doing that day at the [complainant's] house ... does not lead to the conclusion, even in a light most favorable to the verdict, that he intended to commit some felony, to steal something, or to assault a person within the house." *Gear*, slip op. at 5. The court of appeals stated:

We agree with the State that it appears, and the trial court believed, that Appellant was not being truthful as to what he was doing that day at the [complainant's] house. But while the implausibility of his story suggests that it is not true, it does not lead to the conclusion, even in a light most favorable to the verdict, that he intended to commit some felony, to steal something, or to assault a person within the house.

\* \* \*

---

4. Soon after this encounter with appellant, the complainant was brought to where the police had detained appellant, and appellant told the complainant that he had not been trying to break into her home.

5. The court of appeals stated that appellant "testified that he broke out the window and made the noises that [the complainant] heard." *Gear*, slip op. at 4. The record, however, does not support this assertion. Appellant testified at trial that he did not break the window.

In this case, there is no reasonable inference to support the conclusion that Appellant intended to commit a felony, theft, or an assault within the house. Indeed, the State has not identified, either at trial or on appeal, what evidence supports the conclusion that Appellant intended to commit a felony, theft, or an assault within the house. It is reasonable to conclude that Appellant pushed at the nailed-shut door and broke the window because he was trying to get into the house. But among the various things he could have done inside, there is no evidence to support a conclusion that he intended to commit a felony, theft, or an assault.

\* \* \*

There is the matter of Appellant's denials. He denied he was trying to break into the house. . . . But, as we have said, there is sufficient evidence to conclude that he was attempting to break into the house. His denial of being the person who broke the window is consistent with his intending to commit a felony, theft, or an assault within the house. But as with his flight, his unconvincing story allows the conclusion that it is not true but not that he intended to commit a felony, theft, or an assault within the house.

*Gear,* slip op. at 5–7.

■ In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Hoo-*

*per v. State,* 214 S.W.3d 9, 13 (Tex.Cr.App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper,* 214 S.W.3d at 13.

■ The issue in this case is whether a fact finder may reasonably infer that appellant intended to commit a felony, theft, or an assault inside the complainant's home when he attempted to enter the home through the window that he broke. This Court's decision in *Solis v. State*[6] is instructive. The evidence in *Solis* showed that the defendant removed a screen from a window of Alfred's habitation, took the screen to Pierce's habitation, and placed the screen in Pierce's front yard before Pierce interrupted him as he was attempting to enter Pierce's habitation. *Solis,* 589 S.W.2d at 445–47. Solis was charged with, and convicted of, attempted burglary of Alfred's habitation by attempting to enter Alfred's habitation with the intent to commit theft. *Id.*

This Court decided that the evidence, viewed in the light most favorable to the trial court's judgment, was insufficient to establish beyond a reasonable doubt the element of Solis's criminal intent to commit theft in Alfred's habitation. *Id.* This Court stated:

The only circumstance relevant to proof of appellant's criminal intent is his removal of [Alfred's] screen. We agree with the State that this circumstance would have been more incriminating if

6. 589 S.W.2d 444 (Tex.Cr.App.1979).

appellant had been interrupted at the scene immediately after the removal of the screen. However, the State's own witnesses indicate that appellant, after removing the Alfred screen, did nothing further there, although he had not been interrupted or observed, and although a purse was in plain view only a few feet from the window. Instead, appellant took the [Alfred] screen to the Pierce home, placed it on the lawn near the Pierce front window, and attempted to enter the Pierce house before being interrupted by Mrs. Pierce. Appellant is charged with attempting burglary with intent to steal from the *Alfred* home, not the Pierce residence. We conclude that, although the circumstances show that appellant probably intended to enter the Alfred house with intent to commit theft, his behavior after removal of the screen was sufficiently inexplicable that reasonable doubt remains as to what his *specific* criminal intentions actually were.

*Solis,* 589 S.W.2d at 446–47 (emphasis in original).

Unlike the evidence relating to the charged offense in *Solis,* the evidence in this case shows that appellant was interrupted as he was attempting to enter the complainant's home immediately after he had broken the complainant's window, at which time he ran. We believe that *Solis*

supports a decision that a fact finder could reasonably infer from these facts that appellant intended to commit theft. *See id.* ("Instead, [the defendant] took the [Alfred] screen to the Pierce home, placed it on the lawn near the Pierce front window, and **attempted to enter the Pierce house before being interrupted by Mrs. Pierce.** [The defendant] is charged with attempting burglary with intent to steal from the *Alfred* home, not the Pierce residence.") (emphasis in italics in original, emphasis in bold added).[7] In addition, this Court has recently recognized that a fact finder can consider a defendant's untruthful statement (in this case two "implausible" and inconsistent statements by appellant) as affirmative evidence of guilt. *See Padilla v. State,* 326 S.W.3d 195, 201 (Tex.Cr.App. 2010) (rational fact finder can consider a defendant's untruthful statements, in connection with the other circumstances of the case, as affirmative evidence of the defendant's guilt).

On this record, we decide that a fact finder could reasonably find beyond a reasonable doubt that the recently unemployed appellant with about one dollar in his pocket[8] intended to commit theft inside the complainant's home when he attempted to enter the home through the window that he had just broken and where the evidence also shows that appel-

---

7. *See also In re J.O.T.,* No. 13–06–226–CV, 2007 WL 2052720, *2, *3, 2007 Tex.App. LEXIS 5637, at *5, *7–8 (Tex.App.-Corpus Christi July 19, 2007, no pet.) (memorandum opinion not designated for publication). ("Here, J.O.T. was interrupted [after which he ran] while in the act of putting a knife into the residents' door jamb, making it impossible to know if he would have left the premises of his own accord. Furthermore, there was no evidence that [the defendant in *Solis* ] made an attempt to open the [Alfred] window [after removing the screen], whereas J.O.T. was actually wiggling a knife between the doorjamb and the back door of the residents' home.

Therefore, the evidence of guilt is more apparent than in *Solis."*) (citations to *Solis* omitted).

8. We disagree with the court of appeals to the extent that it suggested that a reasonable fact finder could not consider appellant's lack of money as a circumstance relevant to his criminal intent. *See Gear,* slip op. at 7 n. 6 ("Without more, the fact that [appellant] did not have much money in his pocket does not allow the inference that he intended to commit theft inside the house.").

lant ran when interrupted by the complainant and that appellant gave conflicting and implausible explanations for his actions. The cumulative force of all the incriminating circumstances is sufficient to support appellant's conviction for attempted burglary of a habitation. *See Hooper*, 214 S.W.3d at 13.[9]

9. We take note of some out-of-state cases that might support a decision that "entry [into a habitation] alone is not sufficient for a finding of intent for theft." *See, e.g., Commonwealth v. Wilamowski*, 534 Pa. 373, 633 A.2d 141, 142–44 (1993) (and cases cited) (after discussing conflicting decisions "holding that entry alone is not sufficient for a finding of intent for theft" and decisions "holding an opposite conclusion," stating that "we will not accept a *per se* assumption in attempted burglary prosecutions that evidence of a forced opening into an occupied structure automatically gives rise to an acceptable inference of intent to commit a crime inside" and deciding that the evidence was insufficient to support an inference that the defendant possessed an intent to commit a crime inside a habitation where evidence showed that the defendant kicked a door, tore it off its hinges and then walked away); *Commonwealth v. Jacobs*, 247 Pa.Super. 373, 372 A.2d 873, 874–76 (1977) (holding that "intentional entry into an occupied building is by *itself* insufficient to support an inference of an intent to steal" and deciding that evidence was insufficient to support inference of defendant's intent to steal where evidence showed that the defendant broke into an apartment and was immediately arrested by a police officer who was inside the apartment conducting a stakeout) (emphasis in original); *Gebhart v. State*, 531 N.E.2d 211, 212 (Ind.1988) ("Most recently, this court considered the question raised here, namely the sufficiency of the evidence of intent to steal in an attempted burglary case, in *Slaton v. State* (1987), Ind., 510 N.E.2d 1343. Slaton, like appellant in this case, was scared off from a residence and fled, after having broken and having entered, but before manifesting the nature of his unlawful purpose. Slaton used a knife and coathanger, while appellant used a tire tool. Slaton, however, had entered and rummaged about in a car outside before breaking and entering into the residence. It was the evidence of that additional conduct in searching about in the car which brought the evidence of Slaton's intent

Thus the judgment of the court of appeals is reversed, and the judgment of the trial court is affirmed.

COCHRAN, J., filed a dissenting opinion in which PRICE and JOHNSON, JJ., joined. MEYERS, J., dissented.

to steal to the sufficiency level. There is no such additional measure of evidence here.").

It appears, however, that the majority rule, and one that is consistent with our decision in *Solis*, is that a "jury may infer the burglary defendant's intent to commit a crime from the fact that the defendant forcibly entered the home of another." *See* 13 Am.Jur.2d § 21 pages 237–38, § 44 pages 260–62 (2009); *Solis*, 589 S.W.2d at 446–47 (suggesting that intent to steal may be inferred from evidence that defendant attempted to enter a home before being interrupted by the homeowner); *State v. Spikes*, 111 Conn.App. 543, 961 A.2d 426, 436 (2008), *appeal denied*, 291 Conn. 901, 967 A.2d 114 (2009), *cert. denied*, —— U.S. ——, 130 S.Ct. 249, 175 L.Ed.2d 170 (2009) ("It is a basic principle of law that common sense is not to be left at the courtroom door" and "[e]vidence that a defendant attempted to enter a dwelling forcibly provides a reasonable basis for the jury to infer the intent to commit theft"); *Jacobs*, 372 A.2d at 877–79 (Price, J., dissenting) (discussing prior case law holding that "a jury could reasonably infer an intent to commit larceny when a defendant was caught in the act of breaking into an apartment" and noting that this "appears to be in accordance with the view of a majority of jurisdictions which have decided that an unexplained breaking and entering into a building is in itself sufficient to sustain a conviction for burglary with the intent to commit larceny" because, in the absence of evidence of other intent or explanation for breaking and entering, "the usual object or purpose ... is theft") (citing 13 Am.Jur.2d § 52, p. 353 n. 18 (1964)).

In any event, there is more evidence in this case than appellant's attempting to enter the complainant's home. There is the additional evidence of appellant's joblessness, his lack of transportation and funds, his "implausible" and inconsistent explanations for his conduct, and his flight upon being interrupted by the complainant.

COCHRAN, J., filed a dissenting opinion in which PRICE and JOHNSON, JJ., joined.

I respectfully dissent. I would affirm the judgment of the Tyler Court of Appeals which found that the evidence was legally insufficient to support a finding that appellant "intended to commit a felony, theft, or an assault inside the house" when he broke a window at the complainant's house.[1] I agree that there is ample evidence to support a finding that appellant was unlawfully trying to enter the complainant's house, but there is simply no evidence to show what appellant intended to do inside that home. The majority states that "a fact finder could reasonably infer that appellant intended to commit theft when he attempted to enter the complainant's home through the broken window."[2] This seems to me to be a "Don'cha know" standard; appellant broke the window and was about to climb inside, therefore "don'cha know" he intended to commit theft. As the court of appeals explained,

This is an unusual case in which there is no evidence that allows any inference about what Appellant intended to do within the house. By a process of elimination, a rational trier of fact could conclude that Appellant's intentions were not honorable. But we read *Laster* [v. *State*, 275 S.W.3d 512 (Tex.Crim.App. 2009) ] to mean that while the factfinder's prerogative to choose among plausible and rational readings of the evidence is beyond our review, there must still be some evidence to prove the essential elements of the offense and a verdict must be supported by a reasonable inference.[3]

In *Brooks v. State*,[4] we jettisoned the unworkable "factual sufficiency" review because the single, *rigorous* due-process standard in *Jackson v. Virginia*[5] suffices to protect a defendant from conviction without sufficient proof of every element of the offense to satisfy the beyond-a-reasonable-doubt standard.[6] I do not think that there is "adequate evidence"[7] to support, beyond a reasonable doubt, an inference of appellant's intent to commit theft from this

---

1. *Gear v. State*, No. 12–09–00226–CR, 2010 WL 1899645 (Tex.App.-Tyler May 12, 2010) (not designated for publication).

2. Majority op. at 744.

3. *Gear*, 2010 WL 1899645 at *5.

4. 323 S.W.3d 893 (Tex.Crim.App.2010).

5. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

6. *Brooks*, 323 S.W.3d at 906 ("It bears emphasizing that a rigorous and proper application of the *Jackson v. Virginia* legal-sufficiency standard is as exacting a standard as any factual-sufficiency standard (especially one that is 'barely distinguishable' or indistinguishable from a *Jackson v. Virginia* legal-sufficiency standard).") (plurality op.), 914 (the national body of law implementing the *Jackson* legal sufficiency standard "is objective and intellectually rigorous. It sets out apellate presumptions, permissible inferences, and specific criteria to use when assessing the legal sufficiency of the evidence.") (Cochran, J., concurring).

7. *See id.* at 917 (Cochran, J., concurring) (quoting BLACK'S LAW DICTIONARY 1285 (5th ed.1979)).

   Legal sufficiency of the evidence is a test of adequacy, not mere quantity. Sufficient evidence is "such evidence, in character, weight, or amount, as will legally justify the judicial or official action demanded." In criminal cases, only that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction. There is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*.

record. Looking at all of the evidence in this case, even viewed in the light most favorable to the trial judge's verdict, I cannot find the evidence sufficient in quality, character, or weight under the rigorous *Jackson* standard.

## I.

Mona Stafford Brown testified that she lives in the foreman's house behind the Lufkin Livestock Exchange auction barn. It is an old wooden house in the corner of the parking lot. The auction barn was closed down, but Ms. Brown's husband is a caretaker for the property, although he works at the creosote plant. Her husband mows the property and patrols because "it's a lot of vandalism going on back there. It's a lot of people who like to sit around in the dark." She was taking a nap after lunch one day when she heard a "bunch of sounds." She thought it was her husband coming back from the creosote plant right behind the auction barn property.

The rattling noise seemed to be coming from the side door which she and her husband had nailed shut because the porch "isn't that good out there" and they didn't want the grandchildren playing on it. After a third "boom, boom, boom," Ms. Brown got up to look for her husband in the second, storage bedroom. But as she turned the corner, she saw that the room, which should have been dark because a dark curtain covers the plexiglass window, had light streaming through it. The curtain had fallen down. The window was nailed shut in the winter, so Ms. Brown thought that maybe a tree limb had fallen through the window, so she went over to investigate. "[A]nd then this young man stepped in the window. I mean, like we were right here.... And I just—I pan-

icked. I don't know. I said, 'What are you doing?' or something. And he said something to the fact, 'I didn't do it' or something." Ms. Brown said that the strange man "looked startled like he didn't know I was there. Well, we didn't expect to see each other." She thought that he was jumping in the window. Then both of them took off in opposite directions.

Ms. Brown testified that while she ran out the front door, the strange man ran off through the abandoned auction barn field, "it's a big ole field out there with a bunch of troughs." Shortly thereafter, her husband came home and looked around the auction barn, gates, and fences. Then they got a call saying that a man had been stopped by an officer, so she went down the road to see if she could recognize him. She did. And the man immediately said, "Ma'am, I wasn't trying to break in your house." She thought he had been eating candy because he had "incredibly pink lips." Ms. Brown was then asked about pictures the officer took of the nailed-up side door, the wood window frame with plexiglass which had been pushed out of the wall[8] and into a pile of Ms. Brown's shoes and purses,[9] and an aerosol can of oven cleaner discarded in the grass and leaves underneath the broken plexiglass window. The trial judge then asked Ms. Brown about the oven cleaner can and whether the officer had collected it. Ms. Brown did not know anything about a can of oven cleaner, but it wasn't there later.

Officer Rusty Pitts testified that he was dispatched to look for the strange man and found appellant, who matched the description of the man, about 2:00 p.m. coming out of the woods near the road. Appellant had a box cutter in his pocket. When Ms. Brown arrived, appellant immediately said,

---

**8.** The plexiglass had been caulked into the wooden frame for the winter.

**9.** This room was used as Ms. Brown's closet as the "old house" did not have any closets.

"I wasn't trying to break into your house." After investigating and taking photographs (including one of the oven cleaner can), Officer Pitts gave appellant a criminal trespass warning and let him leave. Appellant was later indicted for attempted burglary.

Appellant testified that he is twenty-six [10] and was working at D & J Roofing down the highway from the auction barn that January morning. He "ended up quitting and walking off the job" about noon. He started walking down the highway toward Lufkin. After he had gone about two miles, he was getting hot and tired when he saw "what appears to be a pretty shabby abandoned house with trash in the yard," including a couch in the front yard.[11] So he sat on the couch and fell asleep. He said that, when he woke up, he urinated on the side of the house because he thought it was abandoned.[12] He said that he was mad at himself and he "punched" the building, and then he heard a lady saying, "Are you trying to break into my house?" He said, "No. There's no way I'm trying to break in your house right now." And then he left and started walking down the highway. He denied even seeing the oven cleaner can and denied being under the influence of anything. He said, "I was shocked that there was even somebody living in that place as-well, what I assumed was nobody lived there because of the condition. When somebody actually looked out of the building, that's when I was shocked."

He testified that he expected the police to come and arrest him because Ms. Brown "was scared that I was breaking in her house, and I understand that." He explained that he had the box cutter with a hook blade on it because he used that for his roofing job.

The trial judge then asked appellant why he had quit his job, and he said that the roofing owner worked them "pretty hard and doesn't really pay that much"—$8 an hour. Then, after appellant had been working all morning, without a break, he finally got fed up and said, "Man, I can't do this anymore, dude." And he left. When the judge asked him whether, when appellant had been sent to drug rehab, "huffing" had been involved, appellant said no and immediately volunteered, "The oven cleaner, I have no idea what that's about. I really don't." The trial judge then asked, "Do you have any explanation or had you been eating candy that would have caused your lips to be red and pink?" Appellant responded, "Possibly, yes. I mean, do they look like that now? I don't know."

In his closing arguments, defense counsel pointed out that there was no evidence of an intent to commit theft. And then came the following colloquy:

> Judge: When you have attempt, I don't think they have to prove that mens rea or the intent of what the underlying offense was, do you?
>
> State: I don't believe so, Your Honor.
>
> Defense: I would disagree. I think that you still had to prove what the intent was. Because this is specific intent to commit-

**10.** Appellant admitted that he had a prior robbery conviction, prior theft conviction and one for possession of hash. He did not go to prison, but was placed on probation and went to "rehab for drug abuse and smoking weed."

**11.** Ms. Brown was recalled and verified that there is an "old couch" without any cushions on it in her yard. Bushes and "stuff" were growing up through it.

**12.** He told Deputy Pitts that he had urinated by the corner of the house, but the officer did not see any evidence that appellant had done so.

Judge: It's not alleged. It's not an element as alleged.

Defense: I understand; but I think when it says "with specific intent to commit burglary of a habitation," they have to show his intent was to commit that crime, which all of the elements of burglary of a habitation would have to be met. That's just my position, You Honor.

## II.

Defense counsel was correct. That is the law. In an attempted burglary prosecution, the indictment may read "with the specific intent to commit the offense of burglary of a habitation." [13] But the proof at trial must establish, beyond a reasonable doubt, that the defendant acted with the intent to commit theft, a specific felony, or an assault at the time he acted (here, when appellant broke Ms. Brown's window). [14]

It seems quite plausible that the trial judge in this case found appellant guilty because he incorrectly believed that the State was not required to prove that appellant attempted to enter Ms. Brown's house with the intent to commit a theft, specific felony, or assault. It also seems that the trial judge reasonably concluded that appellant wanted to break into what he thought was an abandoned building to assuage and relieve his anger by "huffing" an aerosol container of oven cleaner. That is certainly not an "honorable" purpose— indeed it is a criminal offense—but entering Ms. Brown's with an intent to "huff" is a Class B misdemeanor, not a theft, felony, or assault. [15]

Although the nonconsensual entry of a habitation at night creates a rebuttable appellate presumption that the actor intended to commit theft, [16] that presumption does not apply in this day-time event. Instead, as an essential element of attempted burglary, the State must prove the intent to commit theft (or any felony or assault) beyond a reasonable doubt; "it may not be left simply to speculation and surmise." [17] Or "Don'cha know."

As the court of appeals aptly noted, the State failed to point to any evidence in the record from which one could fairly infer that intent. [18] The majority says that ap-

---

13. *Young v. State*, 675 S.W.2d 770, 770–71 (Tex.Crim.App.1984) (indictment alleging attempted burglary need not allege that he attempted entry with an intent to commit a particular felony or theft; " 'Our courts have held that an indictment for criminal attempt is not fundamentally defective for failure to allege the constituent elements of the offense attempted.' "); *see also Epps v. State*, 811 S.W.2d 237, 243 (Tex.App.-Dallas 1991, no pet.).

14. *Solis v. State*, 589 S.W.2d 444, 446–47 (Tex.Crim.App.1979) (evidence legally insufficient to support attempted burglary conviction when circumstantial evidence to establish intent to commit theft was his removal of outside screen; "We conclude that, although the circumstances show that appellant probably intended to enter the Alfred house with intent to commit theft, his behavior after removal of the screen was sufficiently inexplica-

ble that reasonable doubt remains as to what his *specific* criminal intentions actually were.").

15. *See* TEX. HEALTH & SAFETY CODE § 485.031 (setting out the Class B misdemeanor of using or possessing "an abusable volatile chemical" with the intent to use it (1) contrary to directions for its use and (2) to affect the nervous system, induce intoxication or change or distort eyesight, thinking, balance, or coordination).

16. *See LaPoint v. State*, 750 S.W.2d 180, 182 (Tex.Crim.App.1986).

17. *Id.*

18. *Gear*, 2010 WL 1899645 at *4 ("Indeed, the State has not identified, either at trial or on appeal, what evidence supports the conclusion that Appellant intended to commit a

pellant lied and gave two implausible and inconsistent stories, therefore the evidence is sufficient to support a finding that he intended to commit theft. Certainly lying is relevant, but I do not think it is sufficient to establish an intent to commit theft, any more than it is to establish an intent to commit murder, sexual assault, or any other possible offense. And those inconsistent stories also support a finding, suggested by the trial judge, that appellant intended to "huff" because there was a can of oven cleaner left in the grass. The majority also says that the intent to commit theft is a reasonable inference because appellant was "recently unemployed" (he walked off the job that morning) and he had only a dollar in his pocket. I do not find it reasonable to infer from the fact that someone had just quit his job and had only a small amount of cash in his pocket that he is about to commit theft.[19] And the combined force of these circumstances—inconsistent stories, quitting his job, and not having much cash on him—do not suffice to prove, beyond a reasonable doubt, that appellant had the intent to commit theft when he broke out Ms. Brown's window. Here, as in *Solis*, the actor's behavior was "sufficiently inexplicable that reasonable doubt remains as to what his *specific* criminal intentions actually were." [20]

In sum, I agree with the court of appeals that the fact that appellant told unbelievable and inconsistent stories about his actions at Ms. Brown's home makes him a liar as well as a trespasser, but it is not sufficient to create a reasonable inference that he intended to commit theft, assault, or some felony once inside her home.[21] The court of appeals applied a properly rigorous sufficiency-of-the-evidence review under *Jackson*. Having said that we would do the same in *Brooks*, I respectfully dissent to the Court's failure to follow its own admonition.

19.  The court of appeals rejected that suggestion and said

[W]e do not conclude, under the facts of this case, that Appellant's lack of money allows an inference that he intended to commit a theft. His testimony about a lack of funds came in the context of a discussion about his general frustration with having walked off his job and with being hot, sweaty, and tired. Without more, the fact that he did not have much money in his pocket does not allow the inference that he intended to commit a theft inside the house. *Gear*, 2010 WL 1899645 at *4 n. 6.

20.  *Solis*, 589 S.W.2d at 447, see note 14 *supra*.

