**Affirmed and Memorandum Opinion filed December 31, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00494-CR

**DENZEL EARL MCGEE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1342932**

## M E M O R A N D U M   O P I N I O N

Appellant, Denzel Earl McGee, appeals his conviction for murder. In four issues, appellant contends (1) the evidence is insufficient to support the conviction, (2) the trial court erred by denying appellant's motion to suppress two in-court identifications of appellant, (3) the trial court erred by admitting testimony during the guilt-innocence phase that appellant is a gang member, and (4) the trial court erred by denying appellant's request for a mistrial after the State allegedly made improper argument during the punishment phase. We affirm.

# I. BACKGROUND

According to the State's evidence, on March 25, 2012, appellant and Tim Brimzy, members of different gangs, had a verbal altercation at an apartment complex. Later that evening, a group including Emanuel Parada, Jordan Sampson, Prince Fair, and complainant Alvin Foley were socializing in a parking lot at the complex. Brimzy had earlier been a part of the group but left. Appellant and four or five other men walked past with their hands in their pants as though they were carrying guns in their waistbands.

Appellant and his companions then returned toward the other group and surrounded it, with appellant standing about three feet from Foley. An unidentified companion of appellant[1] insulted Brimzy's rival gang and demanded to know his location. The group members answered that they did not know. The unidentified man threatened that the group members would all "get a bullet in" the head if they did not reveal Brimzy's location. Parada tried to leave, but the unidentified man pointed a semi-automatic handgun at Parada and ordered him to sit on the hood of a nearby car. The unidentified man then pulled the trigger, but the gun did not fire. Parada pushed the man out of the way and began to run.

Parada testified that, as he fled, he saw appellant shoot Foley in the head with a gun that was about a foot-and-a-half from Foley's head when fired. Sampson and Fair also fled from what became ongoing gunshots fired by at least appellant and the unidentified man. Sampson and Fair both testified they did not see appellant with a gun. However, during a police interview, Fair stated that he saw appellant walking backwards while firing a gun and Foley was standing closest to appellant during that time. Parada and Fair were grazed by bullets while fleeing. Sampson was shot in the arm but survived.

---

[1] That man was never identified or apprehended.

2

Parada's wife, Ashley Castro, testified that she was inside their nearby apartment when she heard gunshots. As Castro looked out a window, she saw appellant walking backwards while firing a semi-automatic handgun about six or seven times. Castro never saw appellant shoot anyone, but she saw him firing toward the area where Foley fell to the ground.

After emergency personnel were called, Foley was transported to the hospital where he was pronounced dead from a single gunshot wound to the head. Based on the soot around the wound but no stippling on the skin, the medical examiner opined that the barrel of the gun was one to three inches away from Foley's head when fired. At the scene, officers discovered numerous spent casings from one or more .380 caliber semi-automatic handguns as well as some fired bullets and bullet fragments.

The investigating officer developed appellant as a suspect after witnesses provided his name and description as a light-skinned black male with red hair and freckles. Sampson, Fair, Parada, and Castro all viewed a police photographic array, which included a photo of appellant. Fair and Sampson (who has known appellant since elementary school) generally identified appellant as one of the men who surrounded the other group. Parada identified appellant as the person who shot Foley. Castro identified appellant as the person she saw shooting a gun during the incident. Neither Parada nor Castro knew appellant before that day, but they had first seen him earlier in the evening when they drove past his altercation with Brimzy.

On April 5, 2012, other officers in a marked police car attempted to pull over a vehicle, in which appellant was a passenger, for a traffic offense. Instead of stopping immediately, the vehicle "slow-rolls" into an apartment-complex, which

3

generally signals to police something is "wrong." After the vehicle stopped and the occupants exited, the officers identified themselves as police officers and ordered the occupants to stay in place. Appellant looked directly at one officer, who was dressed in full police uniform, and then fled on foot. The officer chased appellant through the complex but eventually lost sight of him. Appellant was ultimately found inside an apartment by other officers. He was arrested and charged with Foley's murder.

Appellant filed a motion to suppress any intended in-court identifications of appellant by Parada and Castro, asserting the identifications would be based on an impermissibly suggestive pre-trial identification procedure. After hearing evidence, the trial court denied the motion. During trial, Parada identified appellant as Foley's shooter, and Castro generally identified appellant as a shooter during the incident. The trial court also admitted evidence regarding their identifications of appellant during the pre-trial procedure. A jury found appellant guilty of murder and assessed punishment at 70 years' confinement.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends the evidence is insufficient to support his conviction. When reviewing the sufficiency of the evidence, we view all evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* Circumstantial evidence is as probative as direct evidence in establishing guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

4

Each fact need not point directly and independently to guilt, as long as the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id.*

As pertinent to this case, a person commits murder if he "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." *See* Tex. Penal Code Ann. § 19.02(b)(1), (2) (West 2011). Parada's express testimony that he saw appellant shoot Foley at close range was alone sufficient to support the finding that appellant committed murder under either definition. *See Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012) (recognizing specific intent to kill may be inferred from defendant shooting victim with a deadly weapon). Other evidence supported Parada's testimony and the finding that appellant murdered Foley: (1) the medical examiner's opinion that Foley was shot at close range; (2) the evidence that both Fair and Castro saw appellant generally shooting as he walked backwards, thereby confirming he participated in the gunfire directed toward the other group; (3) the testimony of Fair and Sampson that appellant was one of the men who surrounded Foley's group; (4) the casings found at the scene supporting the testimony that appellant fired a semi-automatic handgun during the incident; (5) the fact that appellant and his companions were angry the other group did not reveal the location of Brimzy—a rival gang member with whom appellant had an altercation earlier in the day; and (6) appellant's flight from persons he knew were police officers about ten days after Foley's murder, indicating consciousness of guilt. *See Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994).

Appellant proffers various reasons that the evidence is insufficient to support the conviction.

5

First, appellant emphasizes Fair's testimony that he saw the unidentified man shoot a gun and never saw appellant with a gun. However, we defer to the jury's prerogative to believe Fair's contrary statement to the police that he saw appellant shooting a gun. *See Gear*, 340 S.W.3d at 746. Regardless, as mentioned above, Parada's testimony was sufficient to support the conviction.

Next, appellant attacks Parada's credibility for several reasons: (1) he must have been drinking for several hours before the shooting because he purchased beer around 6:00 p.m. and the shooting occurred around 9:00 p.m.; (2) Parada was admittedly a convicted felon; and (3) at trial, Parada denied telling the police that he would recognize appellant because they had been in jail together, whereas an officer testified that Parada made such a statement. However, Parada testified that he drank "a beer," and there was no evidence he drank more than that. Nonetheless, the jury was free to decide whether alcohol consumption marred Parada's perception that appellant shot Foley. *See id.* We also defer to the jury's choice to believe Parada despite his criminal record. *See id.* Lastly, it is clear from the context that Parada and the officer both referenced the unidentified man—not appellant—as the person Parada might recognize from jail.

Appellant also argues that Castro's testimony lacked credibility because it would have been impossible for her to see through her apartment window that appellant shot Foley because the apartment was around the corner from the scene of that shooting. However, Castro never testified that she saw appellant shoot Foley, but only that she saw appellant walking backwards while firing his gun toward the area where Foley fell.

Finally, appellant relies on two alibi witnesses he presented at trial who claimed he was at a party at the time of the shooting. However, the jury was free

6

to believe the State's witnesses who not only placed appellant at the offense but also identified him as Foley's shooter or a shooter in general. *See id.*

In summary, because the evidence is sufficient to support the conviction, we overrule appellant's first issue.

### III. MOTION TO SUPPRESS

In his second issue, appellant contends the trial court erred by denying his motion to suppress Parada's and Castro's in-court identifications of appellant because they were tainted by impermissibly suggestive pre-trial identification procedures.

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We give almost total deference to the trial court's findings of historical fact that are supported by the record and its application of the law to facts if the resolution of those questions turns on an evaluation of credibility and demeanor. *Id.* We review *de novo* the trial court's application of the law to the facts when the issue does not turn on credibility and demeanor. *Id.* The trial court is the exclusive trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony at the suppression hearing. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). In reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pre-trial identification procedure. *Luna v. State*, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008). To satisfy that standard, the defendant must establish by clear and convincing evidence and under the totality of the circumstances that (1) the pre-trial identification procedure was impermissibly

7

suggestive, and 2) the procedure gave rise to "a very substantial likelihood of irreparable misidentification." *See Barley v. State*, 906 S.W.2d 27, 33–34 (Tex. Crim. App. 1995); *Santos v. State,* 116 S.W.3d 447, 451 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

## A.   Whether the procedures were impermissibly suggestive

Appellant contends each identification procedure was impermissibly suggestive because appellant has a distinctive appearance—a light-skinned, black male with freckles—and none of the other five photographs in the array depicted a person with light skin or freckles.

Both witnesses and two officers involved in the procedures testified at the suppression hearing. At the end of the hearing, the trial court announced on the record that it found the procedures were not impermissibly suggestive. Because the trial court's ruling on this prong was not based on conflicting evidence which required an evaluation of credibility and demeanor, the ruling is a mixed question of law and fact that we review *de novo. See Amador*, 221 S.W.3d at 673; *Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998).

Although the better practice may be to include as many individuals as possible who fit the suspect's description, it is not essential that all individuals be identical in appearance. *Buxton v. State*, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985). "[N]either due process nor common sense require such exactitude." *Id.* (internal quotations and citation omitted).

In this case, both witnesses separately viewed the same array, which was admitted at the suppression hearing and is part of our record. All photos in the array depict black males, who appear similar in age, facial features, and hair color. The officer who prepared the array testified that based on a booking photo of

8

appellant, a computer program generated at least a thousand possible photos for use in the array. The officer then selected the five that he thought most closely resembled appellant. Appellant relies on the officer's acknowledgement that selecting the photos proved difficult because appellant's complexion was lighter than most of the possibilities generated. However, the officer did not testify that the ones he ultimately selected depicted persons distinctly different in complexion than appellant. Further, our examination of the array reveals that the lighting cast on three other participants makes their complexions appear as light as appellant's and the two remaining participants do not have such distinctly dissimilar complexions than appellant's that the procedures were impermissibly suggestive. *See Brown v. State*, 64 S.W.3d 94, 100–01 (Tex. App.—Austin 2001, no pet.) (holding photographic identification procedure was not impermissible suggestive because all individuals were black males with short hair, similar facial features, and similar clothing and although defendant complained officer used overexposed photo of defendant to comport with description of him as light-skinned, most other photos were also overexposed).

Appellant also relies on Castro's testimony that only appellant's photo depicts a man with freckles. However, we note that the lighting seems to minimalize the freckles, and there was no testimony that either Parada or Castro relied on the freckles alone when identifying appellant. We conclude the freckles appearing in the photo do not render appellant's appearance so different than the other participants' appearances that the procedures were impermissibly suggestive.

**B. Whether any impermissibly suggestive procedures gave rise to a very substantial likelihood of irreparable misidentification**

Even if the procedures were impermissibly suggestive, appellant failed to satisfy the second element for exclusion of the in-court identifications. When the

totality of the circumstances shows there is no substantial likelihood of misidentification, despite a suggestive pre-trial identification procedure, the in-court identification is considered reliable. *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999). Reliability is the "linchpin" for determining the admissibility of identification testimony. *Luna*, 268 S.W.3d at 605; *Ibarra*, 11 S.W.3d at 195. The following non-exclusive factors should be weighed against "the corrupting effect of any suggestive identification procedure" when assessing reliability under the totality of the circumstances: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Luna*, 268 S.W.3d at 605; *Ibarra*, 11 S.W.3d at 195. We consider those factors, all issues of historical fact, deferentially in a light favorable to the trial court's ruling; then, the factors, viewed in that light, are weighed *de novo* against "the corrupting effect" of the suggestive pre-trial identification procedure. *Ibarra*, 11 S.W.3d at 195–96; *Loserth*, 963 S.W.2d at 773–74.

At the conclusion of the hearing, the trial court orally announced that there was no substantial likelihood of misidentification based on the photographic procedures. With respect to the above-cited factors, the trial court remarked that (1) both witnesses had an opportunity to observe the altercation (albeit from different perspectives) and the individual they described as a shooter, (2) the witnesses were in close proximity to the incident and had no eyesight problems, (3) they were "convinced" and did not hesitate in their identifications, (4) neither had made a prior misidentification of the shooter, and (5) the physical characteristics

10

they described to the police matched the person they identified in the photospread—appellant.

Viewed in the light most favorable to the trial court's ruling, the evidence presented at the suppression hearing supported the court's findings by showing the following: (1) both witnesses had already observed appellant earlier on the day of the incident, and Castro added that such observation occurred while appellant was involved in the other altercation; (2) during the incident at issue, Parada was three feet from appellant and got a "good look" at him; (3) Castro saw appellant for several minutes through her apartment window near the location of the incident; (4) neither witness had vision problems; (5) both witnesses had a reason to be particularly attentive: Parada because he was a victim of the incident; and Castro because she looked out the window when she heard gunshots based on concern for her husband's safety; (6) before the identification procedures, both witnesses gave the police descriptions which matched appellant's actual appearance as well as the descriptions of other witnesses; (7) both witnesses immediately recognized appellant in the array and did not express any uncertainty at the suppression hearing; and (8) the identification procedures occurred within one day and eight days, respectively, after the incident. Then, under our requisite *de novo* weighing of the factors against any "corrupting effect" of the pre-trial identification procedures, we conclude the in-court identifications were reliable. *See Barley*, 906 S.W.2d at 35 (holding in-court identifications were reliable despite any impermissibly suggestive pre-trial procedures—witnesses to armed robbery of store viewed defendant from distances of a few feet to thirty feet under good lighting; they were more than "casual observers" because two were in the store and one watched from outside while his mother was in the store and the suspect ran toward witness's car; at the scene, witnesses provided detailed descriptions which

11

matched appellant; and they were positive in their identifications in photographic array).

Nonetheless, appellant argues he satisfied the second element because Parada was intoxicated at the time of the incident and Castro never saw the shooting but instead formed her description of the shooter based on conversations with Parada.

However, appellant did not elicit any testimony at the suppression hearing regarding alcohol consumption by Parada. Such evidence was elicited only during trial. Appellant refers to no place in the record demonstrating the trial court re-opened the suppression hearing, or the parties consensually broached the suppression issue, during trial. *See Black v. State,* 362 S.W.3d 626, 635 (Tex. Crim. App. 2012) (stating that, if trial court is never asked, or declines, to exercise its discretion to reopen suppression hearing, appellate review of ruling on motion to suppress is limited to evidence presented at pre-trial hearing, unless parties consensually broach the suppression issue again before the fact-finder at trial). Nevertheless, there was no evidence during trial that Parada consumed more than one beer before the shooting or that any alcohol consumption marred his perception of the incident.

Additionally, again, Castro never claimed to have seen appellant specifically shoot Foley but has asserted that she generally saw appellant shooting. Castro also made clear at the suppression hearing that she did not form her description of such shooter from conversations with Parada but from her own observation. Parada also testified that although he and Castro discussed the incident before viewing the array, they did not confer regarding identifying appellant; Parada insisted that was not necessary "Because I knew what he looked like. . . . I seen him I was there when it happened."

Accordingly, there was no substantial likelihood of misidentification from any impermissibly suggestive pre-trial identification procedures. Because the trial court did not err by overruling appellant's motion to suppress, we overrule his second issue.

## IV. ADMISSION OF EVIDENCE

In his third issue, appellant contends the trial court erred by admitting evidence during the guilt-innocence phase that appellant is a gang member—specifically, an officer's testimony that appellant is a member of the Forum Park Crips. On appeal, appellant argues that such evidence was irrelevant or any probative value was substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 402, 403.

However, appellant failed to preserve his appellate complaint for review because it does not comport with his sole objection at trial. *See* Tex. R. App. P 33.1(a) (providing that to preserve error for appellate review, the complaining party must make a timely, specific objection and obtain a ruling); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (stating that to have preserved error, complaint raised on appeal must comport with objection made at trial). At trial, appellant objected to the officer's testimony solely on the ground that information she acquired regarding appellant's gang affiliation would be hearsay. The trial court allowed the State to elicit only testimony that was not hearsay. Appellant did not object that the officer's testimony was irrelevant or inadmissible under Rule 403. Accordingly, we overrule his third issue.

## V. REQUEST FOR A MISTRIAL

In his final issue, appellant contends the trial court erred by denying appellant's request for a mistrial after the State asserted the following during

closing argument in the punishment phase:

> And have you watched his demeanor in this courtroom for the last week? He has been laid back. He slept through the crime scene evidence. He really doesn't care. He's shown no remorse. None. And it's really not a --

Appellant objected that the argument implied the jury should consider appellant's failure to testify. The trial court sustained the objection and promptly instructed the jury to disregard the statement and not consider it for any reason. Appellant then requested a mistrial, which the trial court denied.

An improper comment by the State on an accused's failure to testify violates his constitutional and statutory privileges against self-incrimination. *See* U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005); *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). Assuming without deciding that some or all of the State's argument at issue was an improper comment on appellant's failure to testify, we analyze the trial court's denial of appellant's request for a mistrial under the following factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the State's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instructions by the trial court); and (3) the certainty of the punishment assessed absent the misconduct. *See Archie v. State,* 221 S.W.3d 695, 700 (Tex. Crim. App. 2007). A mistrial is required only in extreme circumstances, when the prejudice is incurable. *Id.* at 699. We review the trial court's ruling under the abuse-of-discretion standard and uphold the ruling if it falls within the zone of reasonable disagreement. *Id.*

With respect to the first factor, any prejudicial effect from the State's comment at issue was not great. The comment was brief and was made near the end of the State's total argument. The State did not repeat the comment after

appellant's objection or otherwise reference appellant's alleged demeanor or lack of remorse when urging the jury to impose a life sentence. Rather, the State emphasized the egregious nature of the offense and asked the jury to send a message that the community will not tolerate gang violence, reassure fearful residents of the area where the offense occurred, and give justice to Foley's family.

Second, the trial court immediately instructed the jury to disregard the comment. Further, that oral instruction was reinforced in the jury charge on punishment; the trial court instructed that the jury could not consider appellant's election to not testify or any matter other than the evidence. We presume the jury followed these instructions. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Therefore, we conclude that the trial court ameliorated any potential prejudice from the comment. *See Moore v. State,* 999 S.W.2d 385, 405–06 (Tex. Crim. App. 1999) (recognizing that except in the most blatant cases, harm from a comment on a defendant's failure to testify is cured by an instruction to disregard).

Finally, absent the State's comment, the jury likely would have assessed the same sentence, albeit lengthy (70 years), primarily due to appellant's conduct during the offense. Appellant and his companions ambushed Foley's group while the latter were merely socializing. Appellant then executed eighteen-year-old Foley, purportedly his "best" friend,[2] at point-blank range because Foley and his group did not reveal Brimzy's location. Appellant also demonstrated his willingness to kill others because he and at least one of his companions continued firing with semi-automatic pistols at Foley's group, striking Parada, Sampson, and Fair. Moreover, in assessing the sentence, the jury also likely heeded the State's

---

[2] At the punishment phase, appellant's mother testified that appellant and Foley were "best friends."

15

request to make clear the community will not tolerate gang violence and ensure fearful residents; the jury heard testimony that the apartment complex is located in an area known for gang activity, the shooting stemmed from a dispute between rival gang members, and witnesses to the offense and bystanders were afraid to talk to the police based on fear of retaliation.

In summary, because the three factors support the trial court's decision, we hold it did not abuse its discretion by refusing to order a mistrial. We overrule appellant's fourth issue.

Having overruled all of appellant's issues, we affirm the trial court's judgment.


/s/     John Donovan
        Justice

Panel consists of Justices Boyce, McCally, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).