**Opinion issued November 20, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00954-CR

————————————

**JAIREN DELANO PETERSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 405th District Court
Galveston County, Texas
Trial Court Case No. 16-CR-1888

## MEMORANDUM OPINION

A jury found Jairen Delano Peterson guilty of the offense of cruelty to a non-livestock animal for stabbing to death a dog, and the trial court sentenced him to five years' confinement. Peterson appeals, contending that the trial court erred in (1) denying his motion for directed verdict because the State failed to prove that he

was not engaged in depredation control, which is an exception to criminal liability; and (2) allowing evidence that he was under the influence of PCP at the time he committed the offense. Finding no error, we affirm.

## BACKGROUND

A grand jury indicted Peterson for intentionally, knowingly, or recklessly torturing or killing, in a cruel manner, a female dog, by stabbing the dog with a knife. *See* TEX. PENAL CODE § 42.092. The indictment further alleged that Peterson did not kill the dog for depredation control; that is, to prevent "the loss of or damage to agricultural crops, livestock, poultry, wildlife, or personal property." *Id.* § 42.092(a)(5); TEX. PARKS & WILD. CODE § 71.001(10).

A passing motorist observed a man, later identified as Peterson, who was in the road and bending over a dog making stabbing motions. The motorist called for emergency assistance. The State introduced a recording of the 911 telephone call.

Several officers of the Dickinson Police Department, including Officers F. Gonzales and H. Smith, responded to the scene. Gonzales testified that Peterson was "covered in blood." Peterson "appeared disoriented, confused" and "was sweating profusely." Peterson "wouldn't really communicate" in a lucid manner, and this prompted Gonzales to ask whether Peterson was intoxicated. Peterson eventually told Gonzales that he had killed his dog. Gonzales detained Peterson for safety

2

reasons, at which point Gonzales discovered that Peterson had two knives on his person. Peterson told him that he had used one of these knives to kill the dog.

Gonzales wore a body camera, and a recording of his encounter with Peterson was played for the jury. The recording showed Peterson telling Gonzales that he had killed his dog because he "tripped out." Peterson explained that he had smoked PCP "the other day" and was still under the influence of the drug. The recording also showed Peterson's interaction with one of the other responding officers. Peterson told this officer that he had owned the dog "for a couple of months" and that he "had to" kill it. The officer then asked whether the dog had been aggressive toward Peterson and Peterson replied, "Yes, sir."

Gonzales and Smith found the dog in front of Peterson's garage. The dog was still alive but "covered in blood." The dog "appeared to be in a lot of pain," and was "struggling to breathe." When Gonzales approached her, she attempted to get up and fell down but did not growl. Smith also testified that the dog did not growl or act aggressively. A brief video recording from Smith's body camera showed the dog struggling to stay on its feet. In addition, Gonzales took photographs of a nearby puddle of blood in the road, a blood trail or drag marks leading from the puddle to the dog's location, the dog, and its doghouse. These photographs were admitted into evidence and published to the jury.

M. Trover, the managing animal control officer at the city's animal shelter, also responded to the scene. By the time he arrived, the dog had died. He collected the dog's corpse and held it in the shelter's freezer for evidentiary purposes. A veterinarian, C. Smith, subsequently performed a necropsy. The dog had sustained 37 knife wounds, ranging in depth from one millimeter to five centimeters. Her abdominal cavity had been punctured and intestines protruded from that wound. She had multiple wounds that punctured her chest cavity. Smith testified that the dog most likely died because her lungs collapsed or filled with blood because of these chest wounds. Smith also testified that the dog's death would have been a painful one. Smith took photographs of the dog's wounds and these were introduced into evidence.

When the State rested, Peterson moved for a directed verdict. Peterson contended that the State was required to prove that his actions did not fall within a statutory exception to the offense for the purpose of "wildlife or depredation control," and he urged that the State had failed to introduce any evidence negating this exception. *See* TEX. PENAL CODE § 42.092(f)(1)(B). The trial court denied Peterson's motion.

The defense called a single witness, Dr. Michael Fuller, a professor of psychiatry and a practicing psychiatrist, to testify as an expert in support of an insanity defense. Fuller opined that Peterson suffered from a severe mental disease

4

or defect, possibly a delusional disorder, schizoaffective disorder, or schizophrenia. Fuller opined that Peterson did not appreciate the wrongfulness of killing the dog. Peterson reported to Fuller that Satan had possessed him earlier that day and that he later transferred Satan into the dog by staring into its eyes. With Satan trapped in the dog, Peterson killed it to banish Satan from the world. Fuller also testified that Peterson told him that he had smoked PCP at some point before the day he killed the dog.

In rebuttal, the State called Dr. Victor Scarano, a forensic psychiatrist. Peterson told Scarano that the Illuminati had infected him with a manufactured disease and that he sacrificed the dog to cure himself. According to Scarano, Peterson said that "he wasn't sure what he was doing was right" when he stabbed the dog. Peterson also said that he regretted doing so afterward because he felt that the Illuminati had tricked him into killing his dog. Scarano concluded that Peterson has a psychotic disorder but that Peterson knew that stabbing the dog was wrong when he did so and thus was not insane. Scarano further concluded that Peterson was intoxicated at the time, presumably on PCP.

The jury found Peterson guilty. Peterson then pleaded true to two enhancement paragraphs alleging prior state jail felony convictions for possession of a controlled substance and evading arrest, respectively. The jury found that these

allegations were true and assessed Peterson's punishment at five years' incarceration.

## DISCUSSION

### I. Directed Verdict

Peterson contends that the trial court should have directed a verdict of acquittal because the State did not introduce evidence to prove beyond a reasonable doubt that he did not kill his dog in the exercise of "wildlife or depredation control."

#### A. Standard of review

We review a trial court's denial of a motion for directed verdict as a challenge to the legal sufficiency of the evidence. *Lucio v. State*, 351 S.W.3d 878, 905 (Tex. Crim. App. 2011). In a legal-sufficiency review, we view the evidence in the light most favorable to the jury's verdict to determine whether rational jurors could have found the essential elements of the crime beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). We defer to the jury's resolution of conflicts in testimony, weighing of the evidence, and drawing of reasonable inferences from basic to ultimate facts. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

#### B. Applicable law

The statute criminalizing cruelty to non-livestock animals makes it an offense for a person to intentionally, knowingly, or recklessly torture an animal or in a cruel

6

manner kill it or cause it serious bodily injury. TEX. PENAL CODE § 42.092(b)(1). Torture includes any act causing unjustifiable pain or suffering; cruel manner includes a manner causing or permitting unjustified or unwarranted pain or suffering. *Id.* § 42.092(a)(3), (8). The statute contains an exception for "conduct occurring solely for the purpose of or in support of . . . wildlife or depredation control." TEX. PENAL CODE § 42.092(f)(1)(B). "'Depredation' means the loss of or damage to agricultural crops, livestock, poultry, wildlife, or personal property." *Id.* § 24.092(a)(5); TEX. PARKS & WILD. CODE § 71.001(10). Like the essential elements of the crime, the State had to prove beyond a reasonable doubt that Peterson's conduct did not fall within this statutory exception. TEX. PENAL CODE § 2.02(b). Circumstantial evidence is as probative in proving his guilt as direct evidence. *Issasi*, 330 S.W.3d at 638; *accord Dixon v. State*, 455 S.W.3d 669, 677 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

## C.    Analysis

Peterson does not contest that he intentionally killed his dog. Nor does he dispute that his method of doing so—stabbing it 37 times with a knife—was cruel. Peterson contends that the State did not prove that he did not kill his dog to control the loss of or damage to crops, livestock, poultry, wildlife, or personal property.

From the evidence adduced at trial, however, rational jurors could find beyond a reasonable doubt that Peterson did not kill this animal for the sole purpose of

7

depredation control. It was undisputed that Peterson kept the dog as a pet. Officers who encountered the dog after it already had endured terrific violence at Peterson's hands testified that it was neither aggressive nor defensive. Peterson admitted that he was under the influence of PCP and the jury viewed body camera video footage of his demeanor immediately after he stabbed his dog. Further, Dr. Fuller testified that Peterson told him that he killed the dog because it was inhabited by the Devil. Dr. Scarano testified that Peterson told him that he ritually sacrificed the dog to cure himself of a disease inflicted on him by a sinister secret society. From Peterson's admissions and the video footage, and the absence of any indication of damage to crops, livestock, poultry, wildlife, or personal property, rational jurors were entitled to find beyond a reasonable doubt that Peterson did not kill the dog as a means of depredation control. Accordingly, we hold that the evidence is legally sufficient to prove beyond a reasonable doubt that Peterson's conduct did not come within this statutory exception to the offense.

## II.    Evidentiary Error

Peterson contends that the trial court erred in allowing evidence of his use of PCP because its probative value was substantially outweighed by the danger of unfair prejudice in violation of Rule 403 of the Rules of Evidence. But he did not raise this objection in the trial court and therefore did not preserve this issue for our review. TEX. R. EVID. 103(a)(1); TEX. R. APP. P. 33.1(a)(1).

8

## CONCLUSION

We affirm the judgment of the trial court.



Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland.

Do Not Publish.  TEX. R. APP. P. 47.2(b).