**Affirmed and Memorandum Opinion filed August 11, 2016.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-15-00840-CR

**MICHAEL JEROME CLARK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1366492**

## M E M O R A N D U M   O P I N I O N

Appellant, Michael Jerome Clark, appeals his conviction for capital murder, contending, in a single issue, that the evidence is insufficient to support the conviction. We affirm.

### I. BACKGROUND

According to the State's evidence, during relevant times, complainant Syed Hussain and Sujesh Mahajan were both employed at a gas station in Houston.

Occasionally, Mahajan would make the station's bank deposit and carry the money hidden inside a fast-food bag. On June 17, 2011, Mahajan planned to make the deposit, and accompanied by Hussain, went to Mahajan's car parked on the property. While Mahajan was opening his car door, he saw a hand reach from behind in an attempt to grab the bag of money. Mahajan rushed into the driver's seat and closed the door while Hussain was still outside of the vehicle. Mahajan then heard one or two gun shots, but he did not see a shooting or the gunman. Hussain entered the passenger's seat and was bleeding from his stomach. Hussain was transported to the hospital where he died from a gunshot wound to his abdomen.

Byron Smith, who was walking by the station during the shooting, saw a station employee and another man wrestling over a bag. That man fired two shots with a gun, and one shot struck another station employee causing him to bend down. The gunman then placed the gun to that employee's head and pulled the trigger twice, but the gun jammed. The gunman ran away toward a trail alongside a store adjacent to the station. He dropped the gun when he struck a pole but retrieved it and continued running. Smith could not clearly see the gunman's face but generally described him as black, medium-built, slightly under six feet tall, and wearing a white shirt, black shorts, and a black stocking cap[1] with a baseball cap on top of that.

Another witness, John Washington, who lived in a house by the trail, heard a gunshot and looked out his window. He saw a man rounding a corner by the station at issue, heard two more gunshots, and saw the man run away from the station. The man shoved an object down the back of his pants and then continued

---

[1] Witnesses referred to the cap at various times as a "stocking cap," "wave cap," "skull cap" or "doo rag." For consistency, we will refer to it as a "stocking cap."

by Washington's house. After the man crossed the street by Washington's house, the man pulled a two-piece item off his head, and part was a stocking cap which fell to the ground. The man continued running, and Washington lost sight of him. Washington did not see the man's face but described him as black, about 5'10-11", and 150-180 pounds. Washington showed police officers the stocking cap at the place where it was dropped.

Officers found shell casings from a .380 caliber gun at the scene and recovered the stocking cap. The station's surveillance equipment recorded a man in a white shirt wait about ten minutes in bushes near Mahajan's parked car, immediately approach the employees when they reached the car with Mahajan carrying the bag, struggle with the employees, make a motion toward Hussain resulting in Hussain bending over and grabbing his abdomen, and then run away. But the recording was not sufficiently clear to aid in identifying the perpetrator. The police had difficulty identifying a suspect until over a year after the incident when the results of DNA testing on the stocking cap received a "hit" for appellant in the police database. An officer met with appellant and obtained a buccal swab. That officer testified that appellant generally matched the descriptions given by Smith and Washington as to race, height, and weight. The officer showed a photo array, which included appellant's photo, to Mahajan, Smith, and possibly Washington, but no witness could identify appellant.

A criminalist with the Houston Forensic Science Center swabbed all surfaces on the inside and outside of the stocking cap for materials. A DNA analyst compared the DNA profile from two portions of those materials to the DNA from appellant's buccal swab. The analyst determined that (1) appellant could not be excluded as a contributor to both portions of materials obtained from the stocking cap, and (2) the probability that a randomly chosen unrelated African

American contributed the DNA was one in 430 quintillion for one portion of the materials and one in 29 quintillion for the other portion.

Appellant presented testimony from his brother, who stated that in 2011, appellant donated clothes for the homeless at a church several miles from the gas station at issue, although the brother could not identify the items donated. The brother also confirmed that appellant was living with a sibling a few miles from the station at the time of the offense.

A jury found appellant guilty of capital murder. The State did not seek the death penalty, so appellant was automatically sentenced to life imprisonment without parole. *See* Tex. Penal Code Ann. § 12.31(a)(2) (West Supp. 2015).

## II. SUFFICIENCY OF THE EVIDENCE

In addressing a challenge to sufficiency of the evidence, we view all evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, weigh evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* The trier of fact may choose to believe or disbelieve any portion of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). We do not sit as the thirteenth juror and may not substitute our judgment for that of the jury by re-evaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Our duty as reviewing court is to ensure the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Under the law applicable to appellant's case, a person commits capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit robbery. *See* Tex. Pen. Code Ann. §§ 19.02(b)(1), 19.03(a)(2) (West 2011). On appeal, appellant does not dispute that a person intentionally caused complainant's death during the course of committing or attempting to commit robbery. Rather, appellant's sole argument concerns identity; he contends the evidence is insufficient to establish he was the individual who committed the capital murder and raised merely a suspicion. We disagree.

Appellant emphasizes that no eyewitness could provide more than a general description of the gunman or identify appellant. However, each fact need not point directly and independently to guilt, as long as the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The following evidence collectively supported the jury's finding that appellant was the gunman: (1) the witnesses' general descriptions of the gunman matched appellant's characteristics; (2) the fact that the gunman waited ten minutes for the employees to walk to their car and immediately approached them raised a rationale inference the gunman knew the employees' habits in depositing money, and appellant lived near the station; and (3) the DNA analysis presented astronomical odds that any African American other than appellant contributed the DNA on the stocking cap worn and then dropped by the gunman.

In this regard, appellant also challenges that such DNA analysis indicated appellant was the gunman. First, appellant asserts that DNA from more than one person was present on the stocking cap and appellant donated clothing the same year as the offense. Therefore, appellant suggests his DNA was on the stocking cap as its previous owner but some donee must have committed the murder.

However, appellant misconstrues the testimony of the DNA analyst. The analyst explained that (1) for both samples from the skull cap, he detected a "single source profile" with an "additional minor . . . allele," (2) the additional allele could be from another individual but could also be an elevated baseline, and the majority of the profile was from one individual, and (3) the additional allele was not a sufficient amount to show the DNA was a mixture from two individuals. Accordingly, there was no evidence establishing that DNA from more than one individual was present on the cap. The jury could have rationally inferred that the primary contributor to the DNA on an item such as a stocking cap which conforms completely to the head would be the person who had last worn the cap. Moreover, the jury was free to reject the testimony of appellant's brother, particularly because he failed to identify the stocking cap as an item allegedly donated by appellant.

Next, appellant argues that Washington could not identify the stocking cap recovered by the police and tested for DNA as the item that Washington saw the gunman drop and Washington's testimony was inconsistent on that subject. Washington originally testified he could not tell what sort of item the man dropped as he fled from the station. However, Washington did not waver in testifying the man dropped such item, Washington showed the police the exact spot where it was dropped, and the item recovered by the police was the stocking cap. Additionally, during the State's redirect examination of Washington, he listened, off the record, to the statement he gave the police after the incident. He then testified that such statement refreshed his memory that the item dropped was a stocking cap. We defer to the jury's implicit conclusion that Washington's change in testimony from being unable to identify the item to stating it was a stocking cap was not an inconsistency undermining his credibility but a matter of refreshing his memory.

Consequently, the jury was free to believe that the DNA evidence proved appellant was the gunman who dropped the stocking cap while fleeing the shooting.

In summary, because the evidence is sufficient to support the jury's verdict, we overrule appellant's sole issue and affirm the trial court's judgment.

/s/    John Donovan
Justice

Panel consists of Justices Busby, Donovan, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).